## BRADY, Appellant, *vs.* McCOSKER, Respondent.

A Court of Equity will not entertain jurisdiction to set aside a will of real estate for fraud, or on the ground of the testator's incompetency, where there is a perfect remedy at law, and the objection to the jurisdiction is taken in due season.

But where the party claiming in hostility to the will is not in possession, and an impediment exists which would prevent a recovery at law of the whole or any part of the estate devised, a bill in equity will be entertained to have the will declared void and delivered up to be cancelled.

Accordingly, where a bill was filed for the purpose of setting aside a will on the ground of fraud and undue influence, and it appeared that at the filing of the bill the complainant was not in the actual possession of the estate, and that a trust term in such estate, which vested the legal title in trustees, was yet unexpired, so that no recovery could be had in ejectment; *held,* that a demurrer to the bill for want of jurisdiction was properly overruled.

So also it is a good answer to an objection for want of jurisdiction, that a part of the estate devised is subject to an unexpired lease, under which the lessee or his assignee is in possession.

And where the bill distinctly shewed the existence of an unexpired trust term, and that a part of the estate was occupied by the assignee of an unexpired lease, and the other parts were occupied by persons under an agent, who had assumed the control and management of the property for the benefit of such party as should be entitled thereto, when the question upon the validity of the will should be settled; *held,* that an objection for want of jurisdiction would not lie, although the bill in another place alleged that the complainant was entitled to the whole estate by inheritance in fee simple, and that he "*held and was in lawful possession thereof,*" this allegation being regarded as a formal legal conclusion from the facts specifically set forth in the other parts of the bill.

The complainant claimed half of the estate by inheritance from his father, and the other half by inheritance from his brother, and alleged that the will of his brother was void for fraud, &c.; but in case the will should be adjudged valid, then he still claimed one-half of the estate, and insisted that he was entitled to a partition; and the prayer of the bill was, that the will might be declared void, or that a partition might be had; *held,* that the bill did not make a case for partition, and therefore that it was not liable to objection for multifariousness.

Where a party, claiming an estate by inheritance, files a bill for the purpose of setting aside a will, and dies pending the suit, his devisee may file an original bill in the nature of a bill of revivor and supplement, and if his right as devisee be admitted or established, he will be entitled to the benefit of the proceedings in the original suit.

A person, who is charged with fraudulently procuring the execution of a will in favor of an infant, is a proper party to a bill filed for the purpose of setting aside such will, although he has no interest. He may be charged with the costs.

Appeal from the decree of the Chancellor affirming that of the Vice Chancellor of the First Circuit. The case was this: John McCosker, the elder, died on the 26th of March, 1839, seized of certain real estate in the city of New York, leaving his sons, John and Thomas, his only children and heirs. By his will, (among other things) he directed his executors to take possession of his real and personal estate, and to receive the rents and profits of the real estate for the term of five years, and apply the same to the payment of his debts, also to pay to John an annuity of $200, during the five years, and a like annuity to Thomas, and to pay the balance over to John at the expiration of the five years. He then devised the real estate, after the expiration of the five years, to John during his natural life, and the remainder to his issue in fee, and directed that John and his heirs, after the expiration of the five years, should continue the annuity to Thomas during his natural life. One of the executors named in the will died before the testator, and the other two declined to accept the trust. John died in 1843 without issue and unmarried.

In March, 1844, Thomas, the surviving son of the testator, filed his bill against his son, John Andrew McCosker, the complainant in this suit, and against Maria L. Brady, J. R. Brady, and J. T. Brady, the defendants in this suit, setting forth the above facts, and claiming that on the death of John, he (Thomas) was entitled to one-half of the said real estate as heir of his father, and to the other half as heir to his brother John. That bill also stated that soon after the death of John, the younger, the defendant, J. T. Brady, propounded to the Surrogate of New York, for proof, a paper purporting to be his will, whereby he gave one or two legacies and annuities, and all the rest and residue of his estate to the defendants, Maria L. and J. R. Brady. That bill also charged, that the execution of such will was fraudulently and improperly procured by the defendant, J. T. Brady, and that the same was null and void, so that the said John died intestate; that he (Thomas) opposed the proof of the will before the Surrogate, and the question of its validity was still pending in the Sur-

rogate's Court; that the will was a cloud upon his title, and should be declared void by a decree of the Court of Chancery. It appeared also from that bill that in the absence of the complainant therein, and without his knowledge or consent, his friends had entered into an arrangement with J. T. Brady, who assumed to act for Maria L. and J. R. Brady, whereby R. Martin was to take the control and management of the property, and receive the rents and profits as agent for whoever might be entitled thereto ; that the said real estate, which consisted of houses and lots, was in the hands of numerous occupants as tenants, and that one lot was yet under an unexpired lease given by John, the younger, in his life time, to C. Maas, whose assignee (Piper) was in possession under that lease.

That bill contained an allegation, that the complainant therein was entitled by inheritance as aforesaid, to all of the said real estate in fee simple, and he " *then held and was in lawful possession thereof.*" In case the will of John, the younger, should be held valid, that bill insisted that he (Thomas) was still seized of an undivided half of the said real estate by descent from his father, and that he was therefore entitled to a *partition* of the same. The prayer of the bill was, that the will of John McCosker, the younger, might be declared void ; or in case it should be held valid, that a partition might be made, and for general relief.

The several defendants in that bill appeared thereto. John Andrew McCosker and Maria L. Brady, being infants, put in general answers by their respective guardians. J. R. Brady also answered the bill, and J. T. Brady demurred. A replication to the answer of J. R. Brady was filed, and then Thomas McCosker, the complainant in that suit, died.

In October, 1844, John Andrew McCosker filed the bill in this cause by his next friend, in which he set forth the filing of the said bill by his father Thomas, the allegations therein contained, the proceedings in that suit, and the death of his father, averring also that the matters stated in the said bill of Thomas were true. The bill in this suit further states, that

Brady *v.* McCosker.

the said Thomas McCosker devised all his real estate to the present complainant, including the lands in question; that the former suit had abated by the death of Thomas, and it insists that the present complainant is entitled to the benefit and advantage of the said original suit, and it prays the relief claimed in that bill. The defendants, J. T. Brady and J. R. Brady, put in separate demurrers to the bill, assigning several special causes of demurrer. Their demurrers were overruled by the Vice Chancellor, and on appeal his decision was affirmed by the Chancellor. J. T. Brady appeals to this Court.

*E Sanford,* for appellant.

*Charles O'Connor,* for respondent.

GARDINER, J. It is the established doctrine of a Court of Equity, that it will not assume jurisdiction to set aside a will for fraud, or on the ground of the testator's incompetency, where there is a perfect remedy at law, and where the objection to the jurisdiction is taken in proper season. (2 *Paige* 399; 3 *Br. P. C.* 358; 7 *Price* 663; *Jacob R.* 466; 1 *Mad. Ch.* 85.)

As the jurisdiction of the Court of Chancery, according to the rule above mentioned, depends upon the inadequacy of the legal remedy, the bill must state the impediment to relief in a Court of law. (*Pemberton* vs. *Pemberton,* 13 *Ves.;  Jones* vs. *Jones,* 3 *Meriv.* 166 *and note.*) If the impediment relates only to a part of the real estate embraced in the will, it would seem to be sufficient to confer jurisdiction. As to the part thus incumbered, the complainant would have an undoubted right to the aid of a Court of Equity, (*Story's Eq. Jurisdic.* § 33,) and the jurisdiction thus acquired would upon general principles be retained, in order to prevent a multiplicity of suits, and to afford complete relief to the parties. (2 *John. Cas.* 424; 10 *J. R.* 587; 17 *do.* 384; 1 *Wheaton* 197.)

In the second place, the form of the negative plea to the jurisdiction of the Court, and of the order for an injunction

28

in those cases where an issue of *devisavit vel non* is proper to be awarded, leads to the same conclusion.

The allegation of the plea is general, that the obstruction to the legal remedy charged in the bill, applies to "none of the real estates which are subjects of controversy. (*Armitage* vs. *Wadsworth*, 1 *Mad.* 111.) And the usual order for injunction, restrains the defendant from setting up any lease, outstanding term, &c., to defeat the plaintiff's claim, in any issue or action directed by the Court for the recovery of *any* of the real *estate*, or the rents and profits thereof. (3 *Merivale* 172.)

The complainant alleges that at the time of filing the original bill by Thomas McCosker, the whole premises were subject to the unexpired trust term created by the will of John McCosker, the elder, and part of them to an unexpired lease executed by John McCosker, the younger, on the 28th of February, 1842, to Carston Maas, for three years from the first day of May following, which lease had been duly assigned to Julius Piper, one of the defendants. The trust established by the will of John McCosker, the elder, for the payment of an annuity of $200 to Thomas McCosker during his natural life, was a valid trust under the third subdivision of the 55th section R. S., 1 vol., page 729. The language of which is that " express trusts may be created to receive the rents and profits of lands, and apply them to the use of any person, during the life of such person, or for any shorter term." By the 60th section, the whole estate in law and equity is vested in the trustees. If the trust was invalid, then the lease passed the interest of John McCosker, the younger, to Casston Maas, who was in actual possession at the filing of the bill, paying rent according to said demise to Robert Martin, as agent for the parties who might be entitled to the same. These facts are distinctly alledged in the bill, and admitted by the demurrer, and *prima facie* they present an insuperable obstacle to a recovery at law. If the trust was within the statute, ejectment would not lie for any part of the premises; if it was not, then it could not be maintained against the as-

signee of Maas by the complainant, who claims as to all the interest in controversy, through John McCosker, the lessor. No suit could be sustained against Martin because he received the rents as a receiver, constituted with the assent of both parties, for whoever might ultimately be entitled to it.    He was a mere stake-holder, and if sued, could compel the parties to interplead and settle the right by the decree of a competent tribunal.

Assuming that the impediments to the legal remedy were such as to entitle Thomas McCosker to relief in equity, when he filed the original bill, it cannot be seriously questioned that the complainant succeeded to his rights in this respect, and is entitled to continue the suit, if it was properly commenced.    (*Barbour, Ch. P.* 82.)

The complainant claims as devisee through his father.  Not succeeding to the rights of the decedent by mere operation of law, he could not file a bill of revivor, but could only have the benefit of the original proceedings, and avail himself of the new facts necessary to be stated by an original bill, in the nature of a bill of revivor and supplement.  (*Welford, Ch. Pr.* 220, 222 ; *Barbour Ch. Pr.* 64 *and* 82.)

This has been done, but it is alleged that the complainant being a defendant in the original suit, could not revive it until after a decree giving him an interest in its continuance. (1 *Barbour* 41.)

This would be true if the complainant sought to revive *as* a defendant, or as the representative of a defendant.    But he has succeeded to the right of his father the plaintiff *in the* original suit, and claims the benefit of that suit by virtue of such succession.    This distinction is sufficiently obvious, and is recognised in Soullard vs. Dias, 9 Paige 394, to which we have been referred by the counsel of the defendant.

The main question is whether the present and former complainants, have not precluded themselves by their own allegations from any relief whatever in Chancery.    Thomas McCosker by the original bill, "claimed to be and charged that he was (*Fol.* 72) entitled by inheritance *as aforesaid,* to

all the lands, tenements, and hereditaments, and every part and parcel thereof, in fee simple, and that he then held and was in lawful possession thereof." I thought upon the argument that this statement was an insuperable obstacle to any relief in Chancery, unless indeed the aid of that Court could be invoked in order to remove a cloud from the title of the complainant. But upon a more particular examination of the bill, I am satisfied that my first impressions were erroneous. The bill alleges that the premises in question consisted of two lots of land, with several dwelling houses thereon, in which before, and at the time of the death of John McCosker the younger, and *at all times since,* there were, and at the *time of filing the said* original bill still were, numerous occupants in humble condition, &c., from whom little or nothing could be obtained, unless some one with the right and powers of a *landlord,* and standing *in that relation* should collect the rents, &c. ; *that* Julius Piper was in possession of the property devised to Maas at the filing of the bill, paying rent to Martin, &c. It is further stated, that in consideration of the importance of securing some *immediate control* over said property, in order to prevent waste, and secure the collection of rents, some friends of the complainant without his knowledge or consent, united with J. T. Brady, acting in behalf of those claiming under the will of John McCosker the younger, in a request to Martin to assume the control of the property and receive the rents as agent for *whoever might be entitled* to them, that Martin did so, that the uncertain nature of his power, produced great embarrassment. It is further alleged that the complainant Thomas McCosker was destitute of any means, or property, except what he might be *entitled* to from the estates of his father and brother. That no *part* of his annuity had *been paid* to him since his brother's death, although he had received an *equal sum* from Martin. The bill then denies that the defendants are in the receipt of the rents and profits of said premises or any part thereof (*Fol.* 71) or are in the occupation thereof ; but that the same are in the occupation of *persons residing* thereon. Now these allega-

tions are utterly inconsistent with the statement that the complainant "then held and was in the lawful possession of said premises," if by.that we are to understand any thing more than a legal seizure. The bill informs us that the whole legal and equitable estate was vested in trustees, or in the Court of Chancery, that the assignee of Maas was in possession of the house demised to him, and who were the actual occupants of other parts of the real estate; the person that was actually in the receipt of the rents and profits, and the nature of his authority, which was to receive them as agent for whoever might be entitled to them. The effect of the averment under consideration, read in connection with what has been quoted from other parts of the bill, is only that the complainant Thomas. McCosker was then *entitled* by inheritance as *aforesaid*, to all the lands, tenements, and hereditaments, in fee simple, and that he *therefore* held and was in lawful possession thereof. In other words it is a formal legal conclusion from the facts previously stated.

It is also objected that the bill is multifarious. Multifariousness, as the term is generally understood, applies to bills in which there is a misjoinder of distinct and independent causes of action. Or secondly, where the party has no interest in the subject in litigation; and lastly, where one or a part of the defendants, is able to say that he is brought as a party upon a record, with a large portion of which, and the case made thereby, he has no connection whatever. (1*st* Mylne & *Craig*, 603.)

The two first propositions refer to cases of misjoinder. The last to multifariousness, strictly so called. (*Mylne* vs. *Craig*, 603, *Jac. R.* 141; *Harrison* vs. *Hogg*, 2 *Vesey* 323, *Story's Eq.* § 271, 279, 280.)

There is no misjoinder of actions in this case; for the bill is not properly framed for partition. The plaintiff alleges, that he is entitled to all the real estate by inheritance from his father, and John McCosker the younger, and that the will through which alone the defendants claim title to any part of the property is null and void.

Partition implies an interest in different persons in the property to be divided. When a complainant not only claims the whole, but negatives the title of .the defendant to any part, the bill may be defective, but is certainly not obnoxious to the objection, that a case for partition as a *distinct and independent cause* of action is thereby established. Whatever therefore may have been the intention of the pleader, the bill must be treated as single. (*Story Eq.* § 288, 1 *Sim. and Stuart* 61.)

There is no misjoinder of parties. James T. Brady was a proper party to the bill, for the reason suggested by the Chancellor. In Boule vs. Stewart, 1 Schoale and Lefroy 227, a Solicitor was made a party for assisting his client in obtaining a release. He had no interest in the matters in controversy. It was insisted, that he acted merely in his capacity as Solicitor. Lord Redesdale said he was properly made a party, and ought to be chargeable with costs so far as they related to the release, in case they could not be recovered of his client. (*Story Eq.* § 232.)

Assuming the truth of the facts charged in the bill, as we must for the purpose of this decision, the infant defendant Maria L. Brady ought not to be charged with costs in any event. She had no agency in procuring the Will, and is incapable of ratifying or confirming the acts of others.

The demurrer of the defendant Brady, is to the whole bill, and can only be sustained by establishing a misjoinder of actions, or parties, to which species of multifariousness it is alone adapted. ( *Story Eq. Pl.* § 284, 1 *Mylne and Craig,* 603; 2 *Anstr.* 469.)

If the bill is defective in praying for a partition, or contains irrelevant matter unconnected with the case properly presented, the demurrer should be confined to the parts really objectionable and not extended to the whole bill. It was therefore properly overruled by the Chancellor, and the decree should be affirmed.

RUGGLES, JONES, JOHNSON and WRIGHT, Js., concurred.

BRONSON, J. and GRAY, J., delivered opinions in favor of reversing the decree, with whom JEWETT, C. J., concurred. Decree affirmed.