73 P.2d 1360

In re MORROW'S WILL.

No. 4252.

Supreme Court of New Mexico.

Nov. 22, 1937.

Hugo Seaberg, of Raton, and Reid & Iden, of Albuquerque, for appellants.

Crampton & Robertson, of Raton, for appellee First Nat. Bank in Raton.

F. S. Merriau, of Raton, for appellee Anna Doogan.

Fred C. Stringfellow, of Raton, guardian ad litem for appellee Margaret Jean Sweeney, a minor.

PER CURIAM.

Upon consideration of appellees' motion for rehearing, we have withdrawn the

original opinion and substituted the following as the opinion of the court:

## Opinion.

BRICE, Justice.

A demurrer was sustained to appellants' petition to contest the will of Mary J. Morrow, deceased. They declined to amend and the contest was dismissed. From the order of dismissal this appeal has been prosecuted.

The first paragraph of the petition is as follows: "Now come John Morrow, Jr., Ruth Morrow Hart as the executrix of the estate of John Morrow, Sr., Raymond Morrow, Ruth Morrow and James Morrow, all residents of the County of Colfax, State of New Mexico, as petitioners interested in the property of the deceased, Mary J. Morrow, attempted to be disposed of in the herein described will, and hereby contest the supposed and purported will presented to this court for probating by the First National Bank in Raton, of Raton, New Mexico, and because of the common and general interest of each and all of the heirs at law of the said Mary J. Morrow, hereinafter mentioned and described, these petitioners file this petition in their own behalf and in behalf of each and every one of the hereinafter described and interested persons, stating and describing each interest separately and individually; and the said contestants aver:"

The additional facts alleged in the complaint are in substance as follows:

John Morrow, Sr., of Wisconsin, died July 6, 1915, leaving surviving him four sons and one daughter, to wit: Julia Sweeney, Henry Morrow, Thomas E. Morrow, John Morrow, Sr., of New Mexico, and James Morrow. Fred Morrow of Wisconsin and Thomas Morrow of Colorado are the sons of James Morrow above mentioned. Thomas E. Morrow died intestate in Colfax county, N. M., on the 15th day of October, 1925, leaving surviving him Mary J. Morrow, his widow (the deceased). Ruth Morrow Hart, Mary Morrow Adams, John Morrow, Jr., Raymond Morrow, and James Morrow, all of New Mexico, are the sons and daughters and heirs at law of John Morrow, Sr., of New Mexico, who died February 25, 1935, of whose will Ruth Morrow Hart is the duly qualified and acting executrix, appointed by the probate court of Colfax county by an order entered April 6, 1935. All the above-named persons are interested in the estate of Mary J. Morrow and in the will herein described. Mary J. Morrow died the 7th day of January, 1935.

The property involved in this suit was inherited by Mary J. Morrow, deceased, from her deceased spouse, Thomas E. Morrow, of New Mexico, who inherited said property from his deceased father, John Morrow, Sr., of Wisconsin, and it was therefore the separate property of said Thomas E. Morrow of New Mexico at the time of his death.

The will of Mary J. Morrow, deceased, dated the 10th day of May, 1934, was filed for probate in the county of Colfax, and admitted to probate by order of the probate court of that county on the 18th day of February, 1935. The subscribing witnesses, E. Christiansen and Harry Mc-Bride, were each disqualified to act as a witness because among the persons and corporations receiving benefits and legacies under said will, in that they were stockholders, agents, and trusted employees of the beneficiary of the will, the First National Bank in Raton; and each are interested in said will and property devised and bequeathed thereby.

At the time of the execution of the will of Mary J. Morrow, she was not of sound memory and disposing mind, but was of such age and extreme condition of mental and physical weakness that she was not capable of making a will. At said time and long prior thereto she was in poor health, unable to transact important business and not of mental capacity sufficient to enable her "to know her obligations to the natural objects of her bounty or the character or value of her estate nor to enable her to dispose of it according to a fixed purpose of her own." That she had great confidence in the integrity of the officers and employees of the First National Bank in Raton, and by reason thereof called upon them to assist her in preparing her will. That by undue influence of said officers and employees, they procured her to make the present will, by which practically all of her property was devised and bequeathed to the First National Bank in Raton, as trustee, to be held for a period of ten years to the exclusion of the heirs at law, except Anna Doogan, a sister of the deceased. That said purported will was not the free and voluntary act of the decedent, but was procured by the improper and undue influence of said bank. The demurrer admitted these alleged facts. The court in its order probating the will found that Mary J. Morrow at the time of her death left no children or direct descendants.

The grounds of the demurrer are as follows:

First. That petitioners do not allege facts from which it can be determined that appellants are "persons interested," as contemplated by the statute; in that the facts pleaded, if proven, would not establish that appellants are heirs at law of Mary J. Morrow, deceased.

Second. That, assuming the facts alleged are sufficient to show that appellants are heirs at law of Mary J. Morrow, deceased; yet they are not "persons interested" in contemplation of section 154-211, Ann.Comp.St.1929, because they were not such heirs at law until *after* the will of Mary J. Morrow, deceased, had been probated.

The statute in question is: "When a will has been approved, any person interested may at any time within one year after such probate, contest the same or the validity of the will. For that purpose he

shall file in the court in which the will was proved, a petition in writing, containing his allegations against the validity of the will or against the sufficiency of the proof, and praying that the probate may be revoked."

The claim of interest is made as heirs of Mary J. Morrow, deceased, under section 68-410, N.M.Comp.St.1929, the material part of which is as follows:

"If a deceased person is a widow, or widower, and leaves no issue, * * *

"If the estate, or any portion thereof, was separate property of such deceased spouse, while living, and came to such decedent from such spouse by descent, devise, or bequeath, such property goes in equal shares to the children of such spouse and to the descendants of any deceased child by right of representation, and if none, then to the father and mother of such spouse, in equal shares, or to the survivor of them if either be dead, or if both be dead, then in equal shares to the brothers and sisters of such spouse and to the descendants of any deceased brother or sister by right of representation."

The last-stated ground of demurrer raised the principal question, which will be disposed of first.

So that the issue will be clearly stated, we copy the following from appellee's brief: "As indicated above, it may be conceded that (assuming John Morrow, Sr., of New Mexico himself had an interest) if he had died after Mary J. Morrow but *before* her will was probated, then the present contestants would have been 'interested' in the probate of the will and would consequently have been entitled to file a contest petition. * * * We contend that where the testator's heir dies or makes an assignment *prior to* probate, his heirs, personal representatives, or assigns acquire an interest sufficient to enable them to contest. But if the testator's heir dies *after probate* or attempts to make an assignment after probate, the heirs, personal representatives, and assigns have no interest sufficient to entitle them to contest the will. Much confusion has resulted from a failure to note this important distinction." (Appellees' italics)

Appellees contend in other words, though the appellants are in fact "interested persons," yet because they did not become interested *until after the will was probated*, they are deprived of the right to prove (if they can) that the instrument probated as the last will and testament of Mary J. Morrow was in fact not her will; though the will was forged or executed by means of duress, fraud or undue influence, appellants must be deprived of rights which it is conceded are theirs. We cannot conceive of any reason for such discrimination on the part of the Legislature, and no such construction should be adopted unless the wording of the statute requires it.

In Re Baker's Estate, 170 Cal. 578, 150 P. 989, 992, in holding that the personal representative of the contestant of a will should have been substituted for him upon his death, it is stated: "Such in its gen-

eral aspects is the nature of the proceeding for the contest of a will. Specifically our law provides (Code Civ.Proc. 1327) that 'any person interested' may contest a will which has been admitted to probate within one year thereafter. Upon what is the right of an heir or other person in interest to contest a will fundamentally based? Manifestly, upon the illegal deprivation occasioned to him, the illegal loss to him of property or property rights, by giving recognition to an instrument depriving him of those rights, which instrument for one or another cause, is illegal, invalid and void. While the mere expectancy of an heir is not usually regarded as property, the moment the ancestor has died, that expectancy is changed into a vested interest in property. It becomes thus vested by virtue of the death. If, then, those rights are destroyed or impaired by an instrument which, though in form a will, is not for any reason recognized by the law a valid instrument, clearly the heir is being stripped of his vested rights to property by a paper writing as iniquitous as though it were forged as indeed it may be."

█ It is unreasonable and unjust that an heir at law of a testator, and the former's heir at law, who becomes "interested" in the testator's estate before the probate of a will, should have advantage over one equally interested but whose interest arises subsequent to the probate of a will. If the statute is susceptible of no other reasonable construction, it must be accepted as correct; but the injustice re-

sulting from such construction weighs heavily against it, and if it can be reasonably construed so that the rights of all persons interested will be as nearly uniform as is practical under their different situations, it should be adopted. It should be presumed, if permissible, that the Legislature did not intend such discrimination against persons equally interested. People ex rel. Burhans v. New York, 198 N.Y. 439, 92 N.E. 18; Plum v. Kansas City, 101 Mo. 525, 14 S.W. 657, 10 L.R.A. 371; 59 C.J. title "Statutes, § 600; Black on Interpretation of Laws (2d Ed.) § 44.

For convenience we copy the statute again: "Sec. 154-211. When a will has been approved, any person interested may at any time within one year after such probate, contest the same or the validity of the will. For that purpose he shall file in the court in which the will was proved, a petition in writing, containing his allegations against the validity of the will or against the sufficiency of the proof, and praying that the probate may be revoked."

"When" is defined in Webster's New International Dictionary as follows: "At what time; at, during, or *after* the time that; at or just after the moment that." It is used in this statute in the sense of "after the time that."

█ Provision is made in the statutes for probating wills in common form; and there is no provision permitting contest until a will is probated. But this statute provides, in effect, that after a will has been probated *any person interested* may,

at any time within one year after such probate, contest the same or the validity of the will. The right to contest a will is not confined to those persons interested in an estate before the will is probated, but includes all persons who may become pecuniarily interested within one year after it is probated. We so construe this statute, before making any reference to authorities.

Appellee states: " * * * As pointed out in the foregoing authorities, the right to contest a will was unknown at common law. Consequently, such a right did not survive at common law, and, under the language of our statute, it does not survive."

We stated in Re Morrow's Will, 41 N. M. 117, 64 P.2d 1300, 1306 (on motion to dismiss this appeal), with reference to our statutes for contesting wills:

"The remaining provisions provide for process and service, the manner of trial, etc. These statutes are purely procedural and add nothing to the general law, to which we must look to determine the grounds upon which such contest can be invoked. Such laws are common among the American states and are effective in giving a convenient remedy to enforce rights within the English law; under which the validity of devises of real estate were generally contested in actions at law (though there are exceptions) and that of personal property in proceedings to probate in the ecclesiastical courts, which had no jurisdiction over devises of real estate. 2

Pomeroy, Eq.Jur.(2d Ed.) § 913, and English cases cited in notes; 1 Storey, Eq. Jur.(14th Ed.) § 579; Gaines v. Fuentes, 92 U.S. 10, 23 L.Ed. 524; Kieley v. McGlynn, 21 Wall. 503, 22 L.Ed. 599; Chilcote v. Hoffman, 97 Ohio St. 98, 119 N.E. 364, L.R.A.1918D, 575; 1 Page on Wills § 542; 28 R.C.L. § 405; 68 C.J. Title Wills, § 668; Newman v. Waterman et al., 63 Wis. 612, 23 N.W. 696, 53 Am.Rep. 310; 28 R.C.L. Title Wills, § 401.

"With reference to proceedings in the English courts, see Ellis v. Davis, 109 U.S. 485, 3 S.Ct. 327, 332, 27 L.Ed. 1006.

"There are a number of proceedings common to nearly all the states which have in effect simplified the procedure for enforcing ancient rights, such as ejectment, suits to quiet title, and contests of wills. All of these have been enacted as new remedies for the enforcement of rights recognized by the laws of England."

A statute of Texas (Rev.St.1925, art. 5534) provides: "Any person interested in any will which shall have been probated under the laws of this State may institute suit in the proper court to contest the validity thereof, within four years after such will shall have been admitted to probate, and not afterward."

In construing this statute the Commission of Appeals of Texas in Dickson et al. v. Dickson, 5 S.W.2d 744, 746, to which we have referred, stated regarding the Illinois cases relied on by appellee: "We are, however, not in accord with these quotations, believing that the better reasoning,

as well as the weight of authority, supports the contrary idea to the effect that this right of action is assignable and is the subject of conveyance, and that a 'person interested' means any one who has an interest in the subject-matter of the proceeding, which is the estate of the deceased, at any time within the four years within which a suit to contest the will can be instituted."

The Washington cases hereinafter referred to are cited with approval.

· The same case is reported in Dickson v. Dickson's Estate, 286 S.W. 295, 298, in which the Court of Civil Appeals stated: "But turning from the consideration of precedents to a discussion of the question upon principle, we think that under our law the right to contest the validity of a will does survive and may be assigned. It is true that the right to contest a will, especially after the instrument has been regularly probated, is purely statutory, but that fact does not make the right exclusively a personal one. It might be otherwise if the right were given to persons classified by their relations to the testator. But our statute provides, in effect, that it may be exercised by any one having an interest in the estate disposed of by the will."

The leading case supporting our conclusion is Ingersoll v. Gourley et al., 72 Wash. 462, 130 P. 743, 745, and is usually cited as the principal authority on the question by courts of the same view. In regard to this case appellees state: "The third case cited by appellants * * * is not strictly in point. The actual holding in the case is that *where a contest has been started by a proper party, the proceeding does not abate on the death of that party.* The case is therefore clearly distinguishable. There is a clear difference between *causes of action* which survive on the one hand, and *actions* which do not abate on the other. * * * It is true that by way of pure dictum, the Washington court goes on to say that the cause of action itself survived * * *." (Appellees' italics.)

We think appellees are in error. The statutes of Washington quoted in the opinion have been construed "as not intended to define what causes of action survive, but as referring to causes already survived, and as merely directing in whose name the prosecution of such surviving causes may be continued." So the court held in the Ingersoll Case. The issue was stated as follows: "The sole question presented for our determination is: Does the death of a contesting heir of the putative testator terminate the contest of the will, or may the contest be revived and continued in the name of the administrator or heir of the deceased contestant? In other words, Does the right to contest a will survive to the heirs or personal representatives of the heir of the putative testator?

It was in effect held that unless the right to contest the will survived, then the contest could not be revived by the heirs and further:

"Whether the right to contest a will does survive must, therefore, be determined upon the same principles as govern in other causes of action. If, under such principles, the right survives, then under the statutes quoted the action may be revived and prosecuted in the name of the personal representatives or successors in interest of the person originally entitled to contest.

"It is a general rule, and one to which this court has adhered, that the test of survivorship of a cause of action is its assignability, and, conversely, the test of assignability is survivorship; that is to say, they are always concomitant."

It is clear that the same question was before the Washington court as that now being considered, and that it is not "pure dictum" as appellees suggest. The suggestion that the opinion of the Washington court "is not entitled to much, if any weight," is not borne out by the opinions of other courts which have cited it with approval. Dickson et al. v. Dickson et al., supra; Chilcote v. Hoffman, supra; 1 Page on Wills, § 549.

The Washington statute (Rem. & Bal. Code, § 1307) governing will contests (since repealed) was: "If any person interested in any will shall appear within one year after the probate or rejection thereof, and, by petition to the superior court having jurisdiction, contest the validity of said will, or pray to have the will proven which has been rejected, he shall file a petition containing his objections and exceptions to said will, or to the rejection thereof." Repealed by chapter 156, pp. 642, 707, L. 1917.

In construing it in the Ingersoll Case the Supreme Court of Washington said: "The respondent invites us to follow the Illinois rule; the argument being that, the right of contest being purely statutory, the words of our statute 'any person interested in any will' should be construed as meaning a person having an interest at the time the will goes into effect; that an interest arising subsequently is not an interest in the will; and that a will cannot impair, destroy, or affect any property interest acquired after the death of the testator. This seems to us to beg the question, which is merely one of assignability and consequent survivorship. Looking beyond the mere surface of the thing, the heir of an heir has, on descent cast, exactly the same direct pecuniary interest that the deceased heir had. In either case, but for the will, the same property rights would have descended first to the heir, then to the heirs of the heir. We can see no sound reason, either in equity or in the words of the statute, for limiting the right to protect this interest by contest to the person in whom it is vested at the date of the testator's death. The nature of the interest is in no sense changed in passing from the heir to his successor. It is a property right in no sense purely personal to the heir of the testator, else it could not descend to the heirs of such heir even if there were no will. The statute does not in express terms, nor by necessary implication, fix a specific time

when the interest shall accrue in the contestant. It does fix a limit of one year within which the contest shall be instituted. It seems to us, therefore, that any person acquiring an interest within that year, which but for the will would accrue to his pecuniary advantage, should have the right to contest the validity of the will within that time."

The following authorities support our conclusion to some extent: In re Davis' Will, 182 N.Y. 468, 75 N.E. 530; Brooks et al. v. Paine's Executor et al., 123 Ky. 271, 90 S.W. 600; In re Sheeran's Will, 96 Minn. 484, 105 N.W. 677; In re Langevin's Will, 45 Minn. 429, 47 N.W. 1133; Foster et al. v. Jordan et al., 130 Ky. 445, 113 S.W. 490; Davies v. Leete et al., 111 Ky. 659, 64 S.W. 441; Savage et al. v. Bowen et al., 103 Va. 540, 49 S.E. 668; In re Engle's Estate, 124 Cal. 292, 56 P. 1022; Blinn v. Pillsbury, 252 Mass. 197, 147 N.E. 674; In re Thompson's Will, 178 N.C. 540, 101 S.E. 107; Carthage Development Co., Inc., v. Cushman et al., 101 Misc. 57, 166 N.Y.S. 483; Judson et al. v. Staley et al., 163 App.Div. 62, 148 N.Y.S. 733; Brady v. McCosker, 1 N.Y. 214; Komorowski v. Jackowski, 164 Wis. 254, 159 N.W. 912; In re Baker's Estate, 170 Cal. 578, 150 P. 989; Crawfordsville Trust Co. v. Ramsey, 178 Ind. 258, 98 N.E. 177.

The basis of appellees' contention is decisions of the Supreme Court of the State of Illinois, followed by some other courts which we shall mention. The Illinois court

in McDonald et al. v. White et al., 130 Ill. 493, 22 N.E. 599, 600, construed a similar statute of that state, in which the court said: "The interest must be a direct pecuniary interest affected by the probate of the will, for the reference is to an existing interest, and not to an interest which may be subsequently acquired, since in that event the language would have been, 'or if any one who shall, within three years, be interested and appear.'"

Another case relied on by appellees is Storrs v. St. Luke's Hospital, 180 Ill. 368, 54 N.E. 185, 187, 72 Am.St.Rep. 211. The will of Caroline T. Storrs was duly probated. After the probate, her son, George M. Storrs, died leaving a son, Emery A. Storrs (grandson of the testatrix). Emery A. Storrs brought this contest proceeding. The court said: "The present appellant, Emery A. Storrs, does not come within the definition of 'any person interested,' as used in the statute. He certainly had no interest at the time of the probate of the will. * * * The right to file the bill which existed in George M. Storrs did not descend to the appellant Emery A. Storrs. George M. Storrs had the bare right to establish title by successfully contesting the will. That right was not assignable, as was held in McDonald v. White, supra. If it was not assignable by a conveyance or written transfer, it could not pass by inheritance or descent. The right to dispose of property by will is always considered purely a creature of statute. U. S. v. Perkins, 163 U.S. 625,

16 S.Ct. 1073 [41 L.Ed. 287]; Kochersperger v. Drake, 167 Ill. 122, 47 N.E. 321, [41 L.R.A. 446]. No statute exists in this state, so far as we are advised, which authorizes the right to file such a bill to pass by descent, or to go to an heir by inheritance. * * * We are therefore of the opinion that the appellant Emery A. Storrs had no such interest, at the time of the probate of the will, as would entitle him, in view of the decisions above quoted, to file a bill to contest its validity at the date at which the present bill was filed, and that such right as his father, George M. Storrs, had to file such a bill, did not pass to him by descent."

For other decisions from the State of Illinois, see Staude v. Tscharner, 187 Ill. 19, 58 N.E. 317, Selden v. Illinois Trust & Savings Bank, 239 Ill. 67, 87 N.E. 860, 130 Am.St.Rep. 180, and Selden v. Illinois Trust & Savings Bank (C.C.A.) 184 F. 872.

These decisions of the Illinois Supreme Court have been criticized in Chilcote v. Hoffman, supra; Dickson et al. v. Dickson et al., supra; Ingersoll v. Gourley, supra; and Crawfordsville Trust Co. v. Ramsey, supra. They have been followed by Ligon v. Hawkes et al., 110 Tenn. 514, 75 S.W. 1072; Cain v. Burger et al., 219 Ala. 10, 121 So. 17; Allen v. Pugh, 206 Ala. 10, 89 So. 470; Halde v. Schultz, 17 S.D. 465, 97 N.W. 369; Teckenbrock v. McLaughlin, 246 Mo. 711, 152 S.W. 38.

It would serve no useful purpose to give special consideration to each of these cases.

The two lines of decisions are squarely opposed and cannot be reconciled. It is stated in 1 Page on Wills, § 549:

"If the heir or next of kin dies after testator, and before contest, it is held in most jurisdictions that the right of contesting such will passes to the heirs or next of kin of such deceased heir or next of kin, according to whether the property is realty or personalty." Crawfordsville Trust Co. v. Ramsey, 178 Ind. 258, 98 N.E. 177; Sheeran v. Sheeran, 96 Minn. 484, 105 N.W. 677; Chilcote v. Hoffman, 97 Ohio St. 98, 119 N.E. 364, L.R.A.1918D, 575; Ingersoll v. Gourley, 72 Wash. 462, 130 P. 743; Blinn v. Pillsbury, 252 Mass. 197, 147 N.E. 674.

"In a few jurisdictions the right to contest does not survive. This result is generally reached by construing the statute which allows contest as restricted to the persons who had an interest at the time of the probate and were aggrieved thereby. Storrs v. St. Luke's Hospital, 180 Ill. 368, 54 N.E. 185, 72 Am.St.Rep. 211; Selden v. Illinois Trust & Savings Bank, 239 Ill. 67, 87 N.E. 860, 130 Am.St.Rep. 180; King v. King, 35 R.I. 375, 87 A. 180.

"In Tennessee it seems to be held that the right may pass to an heir or next of kin of the deceased heir or next of kin as one who could have inherited directly from testator. Ligon v. Hawkes, 110 Tenn. 514, 75 S.W. 1072."

These courts seem to base their conclusion upon the assumption that the con-

testant under the statute has a mere naked right to maintain an action to contest a will and nothing more; that the judgment in such proceeding does not directly involve property, and therefore such right to contest is not assignable and, not being assignable, could not survive. Storrs v. St. Luke's Hospital, supra. That therefore such actions are within the rule that the assignment of a mere right of action without property interest is void. 3 Pomeroy's Eq.Jur.(3d Ed.) § 1276; Gruber v. Baker, 20 Nev. 453, 23 P. 858, 9 L.R.A. 302; 3 Storey's Eq.Jur.(14th Ed.) § 1400.

The effect of a successful will contest is to establish the contestant's right to property; for he must be pecuniarily interested (usually as an heir at law), so that when the will is eliminated the laws of descent and distribution are effective to establish his title. Property rights are directly involved.

The assignment of the right to contest Mrs. Morrow's will is not a question in this case. The question is whether, upon the assignment of an inheritance by an heir at law, the remedies for the protection of the title to the property follow such assignment, either to the heir of an heir of a testator, as in this case; and to an assignee of the property by contract.

"The only other question deemed worthy of consideration is whether any person other than the grantor can prosecute this right of rescission. If the plaintiff were a mere assignee of the cause of action, his right to sue would be gravely doubtful; but he is the representative of the estate to which it belongs and sues as such. Hence there is no shadow of maintenance and champerty, forbidding entry to courts of equity in so many cases, reported in the books. Nor is the cause of action one that dies with the person." White v. Bailey, 65 W.Va. 573, 64 S.E. 1019, 1022, 23 L.R.A.(N.S.) 232.

It is true that case is one to cancel a deed and equitable actions, except those strictly personal, usually survive, 1 C.J.S. 182, Abatement and Revival, and the cancellation of wills was not exercised by courts of equity, 2 Pom.Eq.Jur.(2nd Ed.) § 913; yet the wrong complained of affects property rights exclusively, and in no sense personal rights or torts; such actions usually survive. 1 C.J.S. 178, Abatement and Revival.

The Illinois courts base their decisions also upon their conclusion that the right and remedy are purely statutory, for which reason they are limited to the persons named in the statute. Assuming that the premise is true, it does not follow that the cause of action does not survive. The statute is remedial, and affects property rights solely, and such causes of action are usually held to survive.

Spiller v. Atchison, T. & S. F. Ry. Co., 253 U.S. 117, 40 S.Ct. 466, 473, 64 L.Ed. 810, was an appeal from an action brought for the recovery of amounts awarded in a reparation order made by the Interstate Commerce Commission under the Act of February 4, 1887 (24 Stat. 379). It was

claimed that the cause of action was not assignable because not so at common law, and the statute authorizing the suit on the commission's award did not provide that it could be assigned. The Supreme Court stated: "The provisions of the act giving redress, compensatory in its nature, to persons sustaining pecuniary injury through the violation of public duty by the carrier must receive a reasonably liberal and not a narrow interpretation. A claim for damages sustained through the exaction of unreasonable charges for the carriage of freight is a claim not for a penalty but for compensation, is a property right assignable in its nature * * * and must be regarded as assignable at law, in the absence of any expression of a legislative intent to the contrary." Sullivan v. Associated Billposters and Distributors of United States and Canada et al. (C.C.A.) 6 F.2d 1000, 42 A.L.R. 503, and note at page 520; Cooper v. Hillsboro Garden Tracts, 78 Or. 74, 152 P. 488, Ann.Cas. 1917E, 840.

But aside from the question of whether the cause of action survived under the common law, it does survive under section 105-1202 N.M.Comp.St.1929, which is: "In addition to the causes of action which survive at common law, causes of action for mesne profits, or for an injury to real or personal estate, or for any deceit or fraud, shall also survive, and the action may be brought, notwithstanding the death of the person entitled or liable to the same."

 A will contest is a civil action. In re Morrow's Will, supra. If it is an action for deceit or fraud it survives under the terms of the statute, for "any deceit or fraud" is all inclusive. The charge is that the will was caused to be executed through "undue influence," which is a species of fraud, and would come within the statute. In re Slinger's Will, 72 Wis. 22, 37 N.W. 236; Gordon v. Burris, 153 Mo. 223, 54 S.W. 546; In re Mueller's Will, 170 N.C. 28, 86 S.E. 719; Sargent v. Roberts, 265 Ill. 210, 106 N.E. 805; Peacock v. DuBois, 90 Fla. 162, 105 So. 321; In re Powers, 176 App.Div. 455, 162 N.Y.S. 828; Pilcher v. Surles, 202 Ala. 643, 81 So. 585; Roche v. Roche, 286 Ill. 336, 121 N.E. 621; In re Duncan's Will, 154 Wis. 39, 141 N.W. 1002; Hopper v. Sellers, 91 Kan. 876, 139 P. 365.

Section 105-1202, N.M.Comp.St.1929, supra, was enacted in 1884, and is in the exact language of one of the statutes of Ohio, construed in Chilcote v. Hoffman, 97 Ohio St. 98, 119 N.E. 364, L.R.A.1918D, 575, in which the Ohio court stated:

"Section 11235, General Code, provides that: 'In addition to the causes which survive at common law (the) causes of action for mesne profits, or injuries to the person or property, or for deceit or fraud, also shall survive; and the action may be brought notwithstanding the death of the person entitled or liable thereto.'

"In construing this statute, the Court of Appeals said in its opinion in this case:

"'A will contest is a proceeding unknown to the common law, and the right could

not therefore be a cause of action which would survive at common law.'

"It is wholly unimportant whether a will contest is or is not a proceeding unknown to the common law, for the principles of the common law readily adapt themselves to the changing nature of human affairs. Plandermeyer v. Cooper, 85 Ohio St. 327, 98 N.E. 102, 40 L.R.A.(N.S.) 360, Ann. Cas.1913A, 983.

"The language of section 11235, General Code, is sufficiently clear and comprehensive to include all causes of action that survived under the rules and the principles of the common law, regardless of the fact that the common-law court was not the forum in which to bring such action. Under the rule of the common law, the only causes of action that do not survive the death of either party are causes of action ex delicto. The right to contest a will is not a cause of action ex delicto, but comes clearly within the class that survives the death of either party, under the rule and the reason of the common law."

We held this in substance in Re Morrow's Will, supra.

 We conclude that if appellants are heirs at law of Mary Jane Morrow, deceased, they are "persons interested," as contemplated by section 154-211, N.M. Comp.St. supra, though they succeeded to their father's interest (if any) in such estate after the probate of the contested will.

The second ground of demurrer here urged (as we view it for the first time) is in substance that under section 68-410, N.M.Comp.St.1929, supra, such property goes in equal shares to the children of Thomas E. Morrow and to the descendants of any deceased child of his; and if none, then to the father and mother of Thomas E. Morrow, if living, or if not, to the survivors if either be dead; and there is no allegation in the petition to the effect that Thomas E. Morrow left no child or descendants of a child, or that his father and mother were both dead; that by reason of such failure the petition does not state facts that would constitute them "persons interested," within the meaning of the statute. We find no record of this question being specifically raised in and acted upon by the court below.

The grounds stated and urged under this point below are as follows:

"Said contest petition does not state facts sufficient to constitute a cause of action or cause of contest because it does not appear that the contestants have or did have at the time of filing said contest petition any right or rights whatsoever to contest the will of Mary J. Morrow, deceased. The insufficiency of the allegations of the contest petition in this respect are as follows:

"(a) It does not appear that the contestants, or any of them, are heirs at law or next of kin of Mary J. Morrow, deceased, or are in any manner interested in the estate of Mary J. Morrow, deceased.

"(b) If, as seems apparent, the claimed interest of the contestants is based upon Section 68-410, New Mexico Statutes Annotated, Compilation of 1929, it does not appear that the contestants, or any of them, have sufficient interest to contest the will of Mary J. Morrow, deceased, because:

"(5) Even assuming the validity of Section 68-410, the contest petition does not allege facts sufficient to show that said section has any applicability in this case."

Appellants state that the ground of demurrer alleged complies with section 105-412, N.M.Comp.St.1929, is as follows: "The demurrer shall distinctly specify the grounds of objection to the pleadings; unless it does so, it may be disregarded."

And yet the statement is so general that the particular defect in the pleading was not mentioned. The object of the rule is to require the defects to be distinctly and specifically pointed out, and general statements and conclusions do not comply with it. While the demurrer points to a particular subject, it is general in regard to it. The claimed defect in the petition was the failure to allege that Thomas E. Morrow's father and mother had predeceased Mary J. Morrow, and that he had no living child or descendants of a deceased child; by reason of which it does not appear from the petition that appellants are heirs at law of Mary J. Morrow, or otherwise interested in the contested will, and the property by its terms devised and bequeathed. The grounds of objection to the pleading were not distinctly specified; only their legal effect. But we will treat the demurrer as properly raised in the district court.

The petition is incomplete in the particulars mentioned, but such facts may be inferred from the fact that it is alleged petitioners are "heirs at law" and "interested in the estate"; and could not be in the sense of the statute, if there had been children or descendants of children of Thomas E. Morrow, or if his father or mother had been alive. It is immaterial that the allegations of heirship and interest appear in what appellees designate "the preamble" to the petition; the essential thing is that it be alleged in the petition. Standing alone these would be conclusions (a matter yet to be considered), but in connection with the allegations of fact we have mentioned it may be inferred that Thomas Morrow and Mary J. Morrow died without living children or descendants of deceased children and that Thomas Morrow's parents predeceased her; for only in such case could they be heirs at law of Mary J. Morrow, deceased, or be interested in the estate by reason of the relationship alleged.

"While to sustain a pleading utterly without facts is contrary to the whole theory of code pleading, a pleading which states a conclusion of law may not be subject to demurrer where it states the facts upon which the conclusion is based, and this, though the facts are defectively set out.

The true rule, it has been said, is that if substantial facts which constitute a cause of action are stated in the complaint, or can be inferred by reasonable intendment from the matters which are set forth, although the allegations of these facts are conclusions of law or are otherwise imperfect, the complaint is not subject to demurrer for insufficiency." 1 Bancroft's Code Pleading, § 45.

"The true doctrine to be gathered from the cases is, that if the substantial facts which constitute a cause of action are stated in a complaint or petition, or can be inferred by reasonable intendment from the matters which are set forth, although the allegations of these facts are imperfect, incomplete, and defective, such insufficiency pertaining, however, to the form rather than to the substance, the proper mode of correction is not by demurrer, nor by excluding evidence at the trial, but by a motion before the trial to make the averments more definite and certain by amendment.

"From the citations in the foot-note, it is clear that the courts have, with a considerable degree of unanimity, agreed upon this rule, and have in most instances applied it to defects and mistakes having the same general features, and have sometimes severely strained the doctrine of liberal construction in order to enforce it. Thus, if instead of alleging the issuable facts the pleader should state the evidence of such facts, or even a portion only thereof, unless the omission was so extensive that no cause of action at all was indicated, or if he should aver conclusions of law, in place of fact, the resulting insufficiency and imperfection would pertain to the form rather than to the substance, and the mode of correction would be by a motion, and not by a demurrer. It is virtually impossible, however, to lay down a dividing-line, so that on the one side shall fall all the errors which are venial, and on the other all those which are fatal." Pomeroy's Code Remedies (5th Ed.) § 443.

We do not arrive at the conclusion that the petition states a cause of action without some doubts; but following the rule of liberal construction in favor of the pleader, we hold that petitioners have alleged that they are heirs at law of Mary J. Morrow, and are interested as her heirs.

We feel constrained to say that from the fact the district court sustained the demurrer, appellants were called upon as a matter of duty to give grave consideration to the judgment of the court, and to resolve every doubt in favor of an amendment. It costs nothing and often saves disaster. The statute under which appellants assert their claim as heirs at law of Mary J. Morrow, deceased (section 68-410, N.M.Comp.St.1929), apprised them what good pleading required to be alleged.

While appellees agree that the cases of Parker v. Beasley, 40 N.M. 68, 54 P.2d 687, Williams et al. v. Kemp et al., 33 N. M. 593, 273 P. 12, and Michelet v. Cole, 20 N.M. 357, 149 P. 310, support the conclusion we have reached, they assert that

they are in conflict with Farmington v. Mumma, 35 N.M. 114, 291 P. 290, 291, and a number of other cases cited in that opinion. There is such apparent conflict, as will be seen by the following quotations:

"Our first inquiry must be as to what the demurrer admitted. We have held that *facts*, well pleaded, and only such, are admitted by demurrer, and that conclusions of law alleged to follow therefrom are not to be considered as material allegations or binding in any way upon the demurrant." Farmington v. Mumma, 35 N.M. 114, 291 P. 290.

"An objection to a complaint, or a cross-complaint, that it does not state facts sufficient to constitute a cause of action is good only when there is a total failure to allege some matter which is essential to the relief sought, and is not good when the allegations are simply incomplete, indefinite, or statements of conclusions of law or fact." Michelet v. Cole, 20 N.M. 357, 149 P. 310, 312.

The same apparent conflict runs through the authorities, illustrated by conflicting texts from standard books. We cite the following:

"A demurrer admits only such facts as are issuable and well pleaded, it does not admit the truth of an allegation of a conclusion of law, mere deductions or opinions, or matters of law; allegations which are unnecessary or are contrary to the facts of which judicial notice is taken; averments as to the legal effect of an instrument pleaded and which are inconsist-

ent with its language; or averments as to the enactment and effect of a statute relied upon. * * *" 1 Bancroft's Code Pleading, § 173.

Compare this with section 45 of the same work, supra.

"* * * Examples similar to the foregoing might be indefinitely multiplied; but these are sufficient to illustrate the action of the courts, and to show how firmly they have adhered to the doctrine that facts, and not law, must be alleged, and that the averments of legal conclusions without the facts from which they have arisen form no issues, state no causes of action, admit no evidence, and do not even support a verdict or judgment,—in short, that they are mere nullities." Pomeroy's Code Remedies (5th Ed.) § 425.

Compare this with section 443 of the same work, supra.

It is thus stated in Corpus Juris:

"* * * Likewise, where, after reading into the declaration, complaint, or petition every reasonable intendment or admitting all the facts alleged, no cause of action is stated, a general demurrer for insufficiency will lie. All that is necessary, however, to sustain the pleading is that a cause of action can be reasonably inferred from the averments of the pleading. * * *" 49 C.J., title Pleading, § 489.

"The allegation of a conclusion either of law or of fact, instead of the facts upon which they are based, does not usu-

ally make a pleading bad on general demurrer. * * * However, a mere legal conclusion unsupported by essential averments of fact is ineffective as against a general demurrer to support a pleading. If a pleading contains bare conclusions only, or inaccurate conclusions from facts, which do not show a cause of action or defense, it is demurrable. * * * In certain jurisdictions a demurrer, on the ground of insufficient facts to constitute a cause of action or defense, will lie to a pleading alleging a conclusion instead of the facts on which it is based. * * * In certain instances particular pleadings have been deemed sufficient and held not subject to demurrer, even though based on conclusions of the pleader." 49 C.J., title Pleading, § 477.

Ruling Case Law states it as follows:

"It is a universal rule that a demurrer is an admission of the truth of all the facts properly averred in the pleading demurred to. It admits, however, only such facts as are well pleaded, and all intendments and inferences that may fairly and reasonably be drawn therefrom. And these facts will be construed in the light most favorable to the plaintiff. While facts averred in general terms are so admitted, this is not true as to mere recitals. A demurrer does not confess or admit a conclusion of law deducted by either party from the facts pleaded. * * *" 21 R. C.L. § 70, title Pleading.

"As pointed out in another paragraph a complaint, to be bad on demurrer, must be wholly insufficient; if to any extent, on any reasonable theory, it presents facts sufficient to justify a recovery, it will be sustained; and this is the rule however inartificially the facts may be stated. But a demurrer will be sustained where the complaint does not, under the tests applicable, state a cause of action; or if there is a departure in pleading in a matter of substance. * * *" 21 R.C.L. title Pleading, § 80.

The cases reflect every shade of meaning on the question, and are so numerous that it is impractical to attempt any extensive review, and anything less would be useless. It was the established rule of the common law that all objections to the form or substance of a pleading were to be construed strongly against the pleading; nothing was to be presumed or inferred in its favor or supplied by implication in order to sustain it.

This highly technical rule, often exercised with extreme harshness so that results depended as much on technical and precise pleading, as they did on a meritorious cause, gave way to the liberal construction provided for by the reformed procedure; generally by the following form of statute: "In the construction of a pleading for the purpose of determining its effect, its allegations shall be liberally construed with a view to substantial justice between the parties." Section 105-524 N.M.Comp.St.1929.

The cases reflect the extreme in both directions.

What should be alleged in a pleading is often mistaken for what must be alleged in order to state a cause of action within the liberal rule of construction.

The statute contemplates that facts, and not conclusions of law, shall be stated (section 105-404, Comp.St.1929); that no fact shall be stated not required to be proved, and these to be the ultimate, substantive facts which, if proved, will, under the applicable law, entitle the pleader to a judgment (sections 105-501 and 105-506, Comp. St.1929). But "with a view to substantial justice between the parties," the courts have so liberalized the statutes by construction, that the opposite extreme from the rule of the common law is often the result.

▆▆▆ It is certain that mere allegations of conclusions of law state no cause of action or defense; that facts must be stated, and those facts must be such that they will constitute a cause of action. But those facts may be incomplete, stated imperfectly or defectively; yet will be sufficient as against a general demurrer, if a cause of action can be inferred from the matters stated, though some clarification or insufficiency is supplied by a conclusion, either of law or fact.

If the substantial facts constituting a cause of action are stated in a complaint or petition, or can be inferred by reasonable intendment from the matters stated, although the allegations are imperfect, incomplete, and defective, such insufficiency pertains to form and not substance, and the complaint or petition is not vulnerable to a demurrer. Pomeroy's Code Rem.(5th Ed.) § 443.

But this rule does not mean that such pleadings are approved. The Code requires that facts constituting a cause of action shall be stated in ordinary and concise language (section 105-404 N.M.Comp.St.1929), and this means more than an "imperfect, incomplete and defective" statement of the facts. It means that every ultimate fact required to be proved to establish a cause of action should be definitely and certainly stated so that inferences from facts stated would not have to be drawn nor resorted to in support of a pleading.

We first admonish the bar that: " * * * It is undoubtedly difficult to discriminate between these two conditions of partial and of total failure; and it is utterly impossible to frame any accurate general formula which shall define or describe the insufficiency, incompleteness, or imperfectness of averment intended by the codes, and shall embrace all the possible instances within its terms. By a comparison of the decided cases, some notion, however, may be obtained of the distinction, recognized if not definitely established by the courts, between the absolute deficiency which renders a pleading bad on demurrer or at the trial, and the incompleteness or imperfection of allegation which exposes it to amendment by motion; and in this manner alone can any light be thrown upon the nature of the insufficiency which is the subject of the present inquiry." Pomeroy's Code Remedies (5th Ed.) § 442.

We then advise that the rule we have quoted, from section 442 of Pomeroy's Code Remedies (5th Ed.) as "the true doctrine," has been the rule in this jurisdiction since Michelet v. Cole, supra. Other cases decided since, and cited by appellees, can, we believe, be distinguished upon consideration of the pleadings involved. It is asserted that the general allegations of heirship are but conclusions of law; and such allegations did not supply the failure to plead the nonexistence of those who, if existing, would be preferred heirs by virtue of section 68-410, N.M.Comp.St., supra. It is held that a general allegation of heirship standing alone is a conclusion of law (see annotations 110 A.L.R. 1239), but it is also held to be a conclusion of fact; and in connection with facts showing necessary relationship, it is sufficient as against a demurrer, whether a conclusion of law or fact. Physio-Medical College v. Wilkinson, 108 Ind. 314, 9 N.E. 167; Gfroerer v. Gfroerer, 173 Ind. 424, 90 N.E. 757; Dibble et al. v. Winter, 247 Ill. 243, 93 N.E. 145.

"The demurrer takes the point that the bill does not sufficiently show that the complainants are the heirs at law and next of kin of Mittie Boutwell, deceased, and, therefore, show no right to maintain this bill. We are of the opinion, and so hold, that the bill sufficiently shows that the complainants are the sisters and sole heirs at law and next of kin of Mittie Boutwell, deceased, and, as such, are the distributees of the estate of said decedent. The aver-ment of the bill that they are the sisters and sole heirs at law or next of kin of Mittie Boutwell is not the statement of a mere conclusion of the pleader, as argued by counsel for appellants." Boutwell v. Drinkard, 230 Ala. 212, 160 So. 349, 353.

To the same effect are Howison v. Oakley, 18 Ala. 215, 23 So. 810; Catsro's Ex'rs v. Armesti, 14 Cal. 38; Sharpe v. Autry, 183 Ga. 282, 188 S.E. 354; Ricknor v. Clabber, 4 Ind.T. 660, 76 S.W. 271; Cummings v. Keach, 146 Kan. 157, 68 P.2d 1089, 110 A.L.R. 1235; Bender v. Van Allen, 28 Misc. 304, 59 N.Y.S. 885; Judson v. Staley, 163 App.Div. 62, 148 N.Y.S. 733; Tuthill v. Debovoise, 164 App.Div. 728, 150 N.Y.S. 387; Garrett v. Weinberg, 50 S.C. 310, 27 S.E. 770; Heaton v. Buhler, 60 Tex. Civ.App. 423, 127 S.W. 1078; Martin v. Martin, 95 Va. 26, 27 S.E. 810; Gillett v. Robbins, 12 Wis. 319, 320.

The district court erred in sustaining appellees' demurrer to appellants' petition.

Appellants filed in the district court a document entitled "Admission of Estoppel," in which it was stated that the rights and interests of Anna Doogan in the estate of Mrs. Morrow "and under the said will" had been appealed to that court from the probate court and adjudicated in her favor; that the time to appeal to this court from the order of adjudication had expired before the petition of contest was filed; "that therefore her rights under said will are not reviewable in this contest, but have become final." This document closes in these words: "These petitioners, therefore, ad-

mit themselves now, and at the time of filing of said petition of contest, estopped from questioning the rights and interests of the said Anna Doogan in the said estate, as mentioned and described in the will."

It is contended by appellees that this "admission of estoppel" is such a recognition of the will as that appellants are now estopped to deny its validity. While the record does not show the reasons for the filing of this document they are recited at length by appellees; but without this, it may be inferred that it was done for the purpose of eliminating Anna Doogan as an adversary.

We do not understand from this document that appellants admit the validity of the provisions of the will devising and bequeathing property to Anna Doogan. It is based upon an assumption that as no appeal had been taken from the order in which her rights under the will had been determined that appellants were estopped by the judgment from questioning her title to property that had been adjudged to be hers by the district court. Of course, as appellees contend, the will stands or falls as an entirety; but as we read this document, that question is not involved. Anna Doogan is a party, and a necessary one, to this contest, regardless of the document filed. The will is contested as a complete document and not "piecemeal" as appellees contend. It is not admitted that any part is valid. If we could find in the document any support for appellees' statement "that the contestants have taken the position that the will is valid as to Anna Doogan and have consistently maintained that position ever since," the question would indeed be serious; but we do not find any such admission on the part of appellants. Their "admission of estoppel" is that they are estopped by judgment; and its purpose is immaterial if it did not concede the validity of any part of the will, or recognize "the rights of Anna Doogan under the will."

We are not at liberty to determine the legal effect of the so-called "admission of estoppel," except as it affects the issues of this case; and to that extent it has been construed. We can appreciate the concern of counsel, but its effect on the title of the property claimed by Mrs. Doogan is not within the issues.

It is asserted by appellees that section 68-410, Comp.St.1929, supra, applies only in cases of intestacy; while the appellants contend that the provision, "If a deceased person is a widow or widower and leaves no issue," then such property goes (as in this case) in equal shares to the brothers and sisters of such spouse, etc., having no qualification in the statute, none was intended; that the property descends by operation of law without authority on the part of the widow or widower of the deceased person to devise or bequeath it by will.

This statute must be construed in connection with other statutes.

Section 38-109, Comp.St.1929, is as follows: "If the intestate leave no issue,

the whole of his estate shall go to his wife; if he leaves no wife, the portion which would have gone to her shall go to his parents. If one of his parents be dead, the portion which would have gone to such deceased parent, shall go to the surviving parent."

 This statute is not repealed or in any way amended or qualified by the Act of 1927 (Comp.St.1929, § 68-410), supra. When Thomas E. Morrow died the whole of his estate went to his wife.

Section 154-101 Comp.St.1929, is: "Any person of the age of twenty-one years or upwards, and in sound mind, may dispose by will of all his property, except what is sufficient to pay his debts and what is given by law as privileged property to his wife or family."

 Construing the three statutes together, it was evidently intended by the Legislature that Mrs. Morrow should inherit the property of her deceased husband in the absence of a will, and that it should be hers absolutely. If it was her property (and we hold that it was), she had the right to dispose of it by will. We therefore conclude that it is only in case of intestacy that the property in question, or any portion of it, descends to the appellants under the terms of section 68-410, supra. If the will was in fact the will of Mrs. Morrow, appellants have no interest in the property devised and bequeathed by it. It is not her will if it expressed the will of another and not hers, by reason of the exertion of undue influence over her in its making and execution.

We conclude that appellants' petition states a cause of action; that the appellants are persons interested in contemplation of section 154-211, N.M.Comp.St.1929, supra; that the cause of action was for fraud as contemplated by section 105-1202 of the statute, supra; that under the principles of the common law the cause of action survives; that the appellants are not estopped to prosecute this suit; that Mary J. Morrow took the property in question as heir of her husband, and could dispose of it by her will and testament to the exclusion of the appellants.

The motion for a rehearing will be overruled.

The cause will be reversed and remanded to the district court with instructions to overrule appellees' demurrer to appellants' petition, permit amendment of pleadings as the parties may be advised, and proceed with the trial of the case not inconsistent herewith.

It is so ordered.

HUDSPETH, C. J., and BICKLEY and ZINN, JJ., concur.

SADLER, J., not participating.