82 P.2d 916

In re RICHTER'S WILL.

In re REEHTER'S WILL.

No. 4397.

Supreme Court of New Mexico.

Sept. 24, 1938.

H. W. Atkins, of Gallup, and W. A. Keleher and Theo E. Jones, both of Albuquerque, for appellant.

Mechem & Hannett and Donald B. Moses, all of Albuquerque, for appellee.

SADLER, Justice.

This cause is before us upon a motion to dismiss the appeal. A statement of some of the facts involved is essential to a clear understanding of the points relied upon in support of the motion.

August Richter died at Gallup, New Mexico, on April 8, 1936. In due course thereafter two separate appeals, involving two different instruments each purporting to be the last will and testament of the decedent, were pending at the same time in the district court of McKinley County. One instrument, hereinafter called the Elks' will, was dated January 26, 1933, and the other instrument, hereinafter called the Grenwald will, was dated March 28, 1936. One appeal was from an order admitting to probate the earlier dated instrument. This appeal was prosecuted by Nick J. Grenwald, the appellant herein, who claimed to be the sole beneficiary under the later will. The other appeal resulted by operation of law under 1929 Comp., § 154-209, upon the probate court refusing probate to the later will of which Grenwald was the proponent. When both appeals had been docketed in the district court, Grenwald filed a motion to consolidate them and later the parties so stipulated. Thereupon the court entered an order consolidating the causes for all purposes both in the district court and in this court.

When the consolidated causes came on for jury trial, the parties entered into a stipulation by which it was agreed that all testimony as to the first will should be introduced and argument had to the jury thereon and the same procedure followed as to the second will. The case was not to be submitted to the jury until all evidence as to both wills had been adduced and arguments made.

At the conclusion of the evidence as to the first or Elks' will, the appellees moved for a directed verdict entitling same to probate and the court granted the motion. When all the evidence had been introduced touching the second or Grenwald will, the appellees, proponents of the Elks' will, likewise moved for an instructed verdict in their favor disentitling said will to probate. One of the grounds urged was that the purported instrument was not ambiguous (thus excluding extrinsic evidence in its aid) and contained no latent ambiguity therein. The trial court at this time declined to instruct a verdict for appellees and the matter was submitted to the jury both under a general charge and upon special interrogatories. The general and special verdicts were in favor of the probate of the will.

Upon the return of these verdicts, the appellees, as proponents of the Elks' will, moved to set them aside and enter judgment denying probate to the Grenwald will or, in the alternative, to grant a new trial. While five distinct grounds were advanced in the motion, the appellant's brief asserts without challenge by appellees, and the trial court's written opinion indicates, that all grounds save one were abandoned at the argument upon the motion. The reserved ground was "that it did not appear from the evidence before the court that there was latent or patent ambiguity in said writing to justify the introduction of parol evidence with respect to its contents." The trial court granted the alternative prayer of the motion by setting aside the verdicts and awarding a new trial. It thereupon entered formal judgment admitting the Elks' will to probate; also setting aside the verdicts of the jury as to the Grenwald will and awarding a new trial. From said judgment Grenwald appealed to this court, asserting himself aggrieved both by the order admitting the Elks' will to probate and by the order granting appellees a new trial as to the Grenwald will.

The Grenwald will reads:

"Will

"March 28th–1936

"To Whom It May Concern:

"The last man or woman that stay with me until I am through, should have the Twenty Thousand Dollars which I have in checks in my house.

"(Signed) August Richter

"Witness:

"(Signed)   D. M. MacCormack, M. D.
"(Signed)   Walter C. Beddow."

The Elks' will made the local lodge of Elks, of which deceased was a member, residuary legatee and devisee of all property owned by the testator in the United States. Small legacies of $25 each were bequeathed to two nephews by marriage. A $5,000 cash legacy was made in favor of Johan August Fischer, a distant blood relative in Germany. An expenditure of $150 annually from his estate was directed "for the purpose of holding an open meeting at which the members of said (Elks') lodge may enjoy themselves; and in memory of their departed brother and donor."

This bequest is referred to by counsel as testamentary provision for an annual lodge dinner. The instrument also created a trust for his dog but, the evidence showing that the dog died prior to trial, that provision may be passed from consideration. In another paragraph testator directed that all mortgages held by him at death should be renewed as long as requested by the mortgagors at a rate not to exceed 8%, provided current interest was paid and premises kept in repair. Provision also was made for payment of funeral expenses and for permanent up-keep of testator's burial plot.

It will require $5,050 to pay specific legacies. Appellant asserts it will require $4,000 at present interest rates to provide a fund that will yield $150 a year for the annual dinner; and that $1,000 will be required as a trust to provide perpetual care of burial lot. In addition, he estimates inheritance taxes under 1929 Comp., § 141-1102 at $1,100 since all the property goes to collaterals and strangers to the blood. Also, there will be executor's fees and attorneys' fees. The appraised value of the estate is $33,565.19, rendering substantial the amount likely to be allowed for the last two items mentioned.

The property of the estate consists of real estate valued at $5,000 and personal property having a value of $28,565.19, of which $21,050 is cash deposited in three separate banks. Only two checks, one for $100 and another for $50, were found in testator's house, but the jury found in response to a special interrogatory that he did have in his house at the time of death "$20,000 in check account books attached to blank checks." The appellant, of course, claims to be the person remaining with testator to the end although the issue as to who was the legatee under the purported will was not submitted to the jury. Appellees assert it will be his claim that the bank deposits to the extent necessary to satisfy his legacy are earmarked by the will for that purpose. But this issue, too, was not determined below and is not before us for decision.

With this statement of the facts, we now examine the points relied upon by appellees, Gribben, Executor, and Benevolent and Protective Order of Elks, Lodge No. 1440, Gallup, New Mexico, in support of their motion to dismiss the appeal. They are (1) that insofar as the appeal is from the order probating the Elks' will, the appellant is not an aggrieved party, and (2) that insofar as he seeks on this appeal to review the trial court's action in awarding a new trial as to the Grenwald will, appellant attempts to review a purely interlocutory order. It is thus seen that in effect two appeals are before us with a separate motion directed at each. If the motion were good as to one and bad as to the other, we still should be compelled to deny same and review the case properly before us. But it will be found unnecessary thus to segregate, for we think the motion good upon neither ground. We shall deal with these points in the order of their statement above, first disposing

of the contention that the order probating the Elks' will does not aggrieve appellant.

It should be here stated that the parties and the court proceeded below upon the theory that, if shown to be valid, both instruments were entitled to probate, the later instrument operating to revoke the former only pro tanto. Such is the theory upon which the matter is presented to us on the motion to dismiss. The appellees, justifying the correctness of this theory, quote 1 Page on Wills, § 437, page 694, reading:

"§ 437. Revocation by later will—Later Will consistent with earlier. If the two wills are consistent, the first is not revoked by the second; and the two can be treated, in legal effect, as one will. If the later will does not purport to dispose of all of testator's property, the presumption against partial intestacy will induce the court to construe the two wills together as far as can reasonably be done."

■ The parties agree that in order to contest a will the contestant must be pecuniarily interested. In re Morrow's Will, 41 N.M. 723, 73 P.2d 1360. The appellant's pecuniary interest in the estate is not challenged. The appellees merely claim he is not aggrieved. They thus state their position in their brief: "Therefore, Grenwald is not aggrieved by the decision of the court because both wills can stand together and by the terms of the later testamentary gift, if it is finally sustained, he will get his $20,000.00 or so much there-of as the court may award to him, not exceeding the $20,000.00 he claims."

■ The phrase "or so much thereof as the court may award to him" in the paragraph just quoted from brief of appellees discloses appellant as an aggrieved party. For, if the Elks' will be invalid and the Grenwald will valid, there can be no doubt about Grenwald receiving the full amount of his legacy. Whereas, if both wills stand he may or may not do so. Without accepting the accuracy of appellant's summary from which he deduces there will be $24,536.56 with which to pay legacies and trusts totaling $30,050, we are satisfied that the full payment of the Grenwald legacy under the second will may be jeopardized if the first will is sustained. This is all that is required to make him an aggrieved party as respects probate of the earlier will. Supreme Court Rule V, § 1. See In re Swan, 115 Me. 501, 99 A. 449; In re Hunt's Will, 122 Wis. 460, 100 N.W. 874; McDonald v. McDonald, 142 Ind. 55, 41 N.E. 336; In re Land's Estate, 166 Cal. 538, 137 P. 246; In re Zollikofer's Will, 167 Cal. 196, 138 P. 995; Vestry of St. John's Parish v. Bostwick, 8 App.D.C. 452.

■ Does an appeal lie from the trial court's order granting a new trial upon the petition to probate the Grenwald will? We answer that under the situation here disclosed it does. The two appeals were granted in a single order. Insofar as the appeal relates to action on the Elks' will, it is from a final judgment admitting same

to probate and is governed by Supreme Court Rule V, § 1. As related to the award of a new trial of the issues touching probate of the Grenwald will, however, the appeal is governed by Supreme Court Rule V, § 2, authorizing appeals from such interlocutory orders "as practically dispose of the merits of the action, so that any further proceeding therein would be only to carry into effect such interlocutory judgment, order or decision."

The Grenwald will went to the jury upon the usual issues arising in connection with the probate of a will, execution, attestation, publication, testamentary capacity of testator and undue influence. The general and special verdicts upon these issues were favorable to probate of the will. The appellant also offered evidence to explain certain words used in the will. This was upon the theory that the will contained a latent ambiguity which this evidence would explain. In an able and exhaustive exposition of his views, contained in a written opinion filed in the case, the trial judge rejected this evidence as insufficient to explain the ambiguity mentioned and held the same was improperly admitted. The opinion states:

"In other words, even if the evidence is admissible, the extrinsic facts must be applied to the words of the will to see if they explain the words used. If the extrinsic evidence does not aid the Court in explaining the words of the testator, then the evidence does not serve the purpose for which it is held admissible, under the latent ambiguity rule.

"For instance, the check books, or bank deposit books, are offered in evidence for the purpose of explaining the words used in the will. Does this extrinsic evidence, to-wit, the 'check deposit books,' explain the words of the will, 'the Twenty Thousand Dollars which I have in checks in my house?'

"If the extrinsic evidence offered does not serve the purpose for which it is held admissible, how can the Court, under the law and the rules applicable in such cases, hold that this evidence is admissible? Does the fact that the testator had 'check books' or 'bank deposit books' in his house explain what the testator meant when he used the words 'the Twenty Thousand Dollars which I have in checks in my house?'

"The Court holds that the extrinsic evidence offered does not explain the words of the will, and therefore the evidence was improperly admitted at the trial of this case.

"For the reasons given, the Court is constrained to hold that the motion of the contestant for a new trial should be sustained, and that a new trial be granted."

The appellant argues that having thus held the will invalid by reason of its latent ambiguity, the court should have granted the appellees' prayer for judgment. In this we are disposed to agree. Appellant says he has no more evidence to offer.

He thus states his position: "Certainly it would not seriously be contended· that appellant must submit his case to another jury in order that evidence heretofore admitted but not involved in the jury's verdict should again be offered so that the court could rule the same out. If appellant under such circumstances tried this case to one hundred juries and each one found that the instrument was entitled to probate still appellant would find himself faced with the ruling of the court that the evidence did not explain the ambiguity and therefore the instrument was meaningless and could not be enforced either as a last will and testament or a part of decedent's last will and testament. That is the reason appellant contends that the order entered in this case granting a new trial is an appealable order under Rule V, Sec. 2 of the Supreme Court Rules."

Ordinarily, an award of a new trial is not appealable. 4 C.J.S., Appeal and Error, § 123, p. 244. The reason is obvious. Upon the next trial the aggrieved party may prevail and thereby cease to be aggrieved. Counsel cite us to no New Mexico cases where an appeal from an order granting a new trial is involved. We several times have been ·called upon to construe the language of Supreme Court Rule V, § 2, as it appeared in L.1917, c. 43, § 2, in its application to a variety of interlocutory orders. other than one of the kind now before us. See Otto-Johnson Merc. Co. v. Garcia, 24 N.M. 356, 174 P. 422; Griffin v. Jones, 25· N.M. 603, 186 P. 119; Cornett v. Fulfer, 26 N.M. 368, 189 P. ·1108, and Cooper v. Brownfield, 33 N.M. 464, 269 P. 329.

Although without a precedent of our own, authorities from other jurisdictions indicate that an order granting a new trial may be of such a nature as to warrant review. In 5 C.J.S. § 1620, p. 525, the author of the text on Appeal and Error states: "When the court, in granting or refusing a new trial, rules on a question of law, such ruling is not a matter of discretion, and the ruling may and should be reviewed. In other words, the rule that granting of a new trial is within the trial court's discretion which will not be disturbed unless abused applies only when the discretion is exercised on the facts, and the correctness of a ruling on a question of law will be determined on appeal, independently of the judgment of the trial court."

In Walker v. Quinn, 134 S.C. 510, 133 S.E. 444, the court was dealing with a statute permitting an appeal from "an ·order affecting a substantial right made in an action, when such order in effect determines the action and prevents a judgment from which an appeal might be taken, or discontinues the action, and when such order grants or refuses a new trial;" etc. After reviewing earlier decisions the court said [page 447]:

"The principle and proceedings are thus made perfectly clear upon the matter of appeals· from orders granting or refusing new. trials:

"(1) An order granting or refusing a new trial based upon a consideration of the weight and sufficiency of the evidence is not appealable.

"(2) A similar order based upon a matter of law is always appealable, without conditions, which of course includes the ground that the circuit judge abused his discretion in granting or refusing the order."

While appellees lay great stress upon the fact that this decision is based on a statute, the statute seems to do nothing more than apply the rule as quoted from 5 C.J.S., Appeal and Error, § 1620, p. 525, supra. So, too, have we a statute which, although not mentioning by name orders granting or refusing a new trial, employs language rendering appealable all interlocutory orders which "practically dispose of the merits of the action," etc. This will include an order granting a new trial based upon errors of law.

In Snyder v. Guthrie, 193 Iowa 624, 187 N.W. 953, 24 A.L.R. 950, we find an application of the rule laid down in 5 C.J.S., Appeal and Error, § 1620, p. 525, quoted supra. The court said [page 954]: "Appellee invokes the rule that sustaining the motion for new trial is within the discretion of the trial court, and that the Supreme Court is slow to reverse. This is the general rule, and is so well established that citation of authority is unnecessary. It is not, however, absolute. In a proper case, the Supreme Court will not hesitate to review the order. [Citations omitted.] In the instant case the evidence is quite fully set out, and the situation is substantially as fully presented to us as it was to the trial court. Furthermore, it is said that appellant has presented all the evidence it is possible for her to present. The effect of sustaining the ruling of the trial court would be to end the case. In other words, if, on a new trial, the evidence is the same as now, it would be the duty of the trial court to direct a verdict for the defendants. Under such circumstances, the question is, to all intents and purposes, a question of law, whether the undisputed evidence, or upon conflicting evidence, is sufficient to take the case to the jury. Under such circumstances, we ought to, and we are disposed to, now determine this vital question." See, also, Davenport v. Firemen's Ins. Co., 47 S.D. 426, 199 N.W. 203, and Christensen v. Royal Ins. Co., 65 S.D. 246, 272 N.W. 820.

We think the instant case falls within the principle laid down in the cases cited. For purposes of our review, it is as though the trial court upon setting aside the verdicts had entered judgment for appellees. A pure question of law is presented which we are disposed to settle now. The granting of a new trial for the reasons set forth in the trial court's opinion, viewed in the light of appellant's announcement that he has no more evidence to offer, is such an order "as practically disposes of the merits of the action,"

etc. The motion to dismiss the appeal will be denied.

It is so ordered.

HUDSPETH, C. J., and BICKLEY and BRICE, JJ., concur.

ZINN, J., did not participate.