## WILL OF SCHACHT.

*May 5—September 23, 1921.*

*Wills: Execution: Publication: Form: Validity: Undue influence: Insane delusions of testator: Burden of proof.*

1. Where the subscribing witnesses to a will testified that it was not read over to testatrix in their presence and that she did not say that the document was her will or request them to sign it, but that they were requested by the attorney who drew the will to witness it, the request being made in the presence and hearing of testatrix, both seeing her affix her signature and each signing the document in her presence, there was a sufficient compliance with the law.
2. The burden of showing alleged undue influence of the executor and beneficiary upon the testatrix is on contestant, as is also the burden of establishing that testatrix was of insufficient mental capacity and that she had insane delusions regarding her daughter.

APPEAL from a judgment of the county court of Milwaukee county: JOHN C. KAREL, Judge. *Affirmed.*

A few days before her death and on February 2, 1920, Johanna Schacht, then about eighty-one years of age, made and executed the last of a series of six or eight wills drawn since 1915, and in some of which contestant had been named beneficiary. It provided in substance for the purchase of a lot in the cemetery and the erection of headstones for herself and a deceased daughter; three bequests of $100 each to persons not related to her; appointed one *Charles E. Paul* executor; and also provided:

"My daughter, *Nellie Winters,* is entirely disinherited and shall receive nothing except as hereinafter provided.

"All my property shall be held in trust by *Charles E. Paul* and shall be converted into cash or other securities at his discretion, and if my grandson William G. Paul is living and shall turn up, he shall receive three thousand dollars. If my grandson does not appear in five years, or if it shall be determined that he is dead, then *Nellie Winters,* my daughter, shall receive two thousand dollars.

"I give and bequeath to *Charles E. Paul* two thousand
dollars, this to cover his services, exclusive of actual ex-
penses. . . .

"If there shall be a residue of my estate after all the
above are paid, I give and bequeath two thousand dollars
to the Associated Charities of Milwaukee, and if there is a
residue after the payment of this sum it shall go to *Charles
E. Paul.*"

The will was written out in long hand on three sheets
of paper, appears to have been signed on the last page by
testatrix, and her signature was followed with an attestation
clause and with the signatures of Mrs. Schoenfeld and Mrs.
Fitzgerald as witnesses.

Objections were filed to its allowance by *Nellie Winters,*
the only living child of Mrs. Schacht. *Mrs. Winters* had
formerly been married to one Paul, and the William G. Paul
described as the grandson of the testatrix in the foregoing
instrument was the son of *Mrs. Winters* by the former
marriage. The *Charles E. Paul* designated as executor and
also provided for in said instrument was the brother of the
former husband of *Mrs. Winters.*

After hearing, the will was admitted to probate, and from
such order and judgment the contestant has appealed to this
court.

For the appellant there was a brief by *Howard P. Haberla,*
attorney, and *Wm. J. Kershaw,* of counsel, both of Mil-
waukee; and the cause was argued orally by *Mr. Haberla.*

*A. W. Richter* of Milwaukee, for the respondent.

The following opinion was filed May 31, 1921:

ESCHWEILER, J.   The contestant urges four objections to
the allowance of said will: (1) that it was not properly
executed; (2) that its execution was procured by undue
influence of *Charles E. Paul,* named executor and beneficiary
therein; (3) that the testatrix was not of sufficient mental
capacity to make a will; (4) that she was then subject to

insane delusions concerning the contestant, her daughter, *Nellie Winters.*

One of the subscribing witnesses was an entire stranger to the deceased, the other had known her but a short time. From their testimony it appears that the will was not read over to the testatrix in their presence nor did she say that the document was her will or request them to sign. They were, however, requested by the attorney who drew the will to witness the will of the testatrix, and such request was in the presence and hearing of the testatrix. They both saw her affix her signature and they each signed the document in her presence and in the presence of each other. Whatever may be the ruling in other jurisdictions, we think it is clear that under the former adjudications of this court there was a sufficient compliance with the law so far as the formal execution of the will is concerned. *Will of Griffith,* 165 Wis. 601, 605, 163 N. W. 138, and cases cited. The objection on that ground was therefore properly overruled.

We find no evidence in the record upon which a finding could have been properly made that *Charles E. Paul,* named as executor and also as beneficiary in said document, exercised anything in the nature of undue influence upon the testatrix in connection with the making of the will. The burden is upon the contestant on such an issue. *Armstrong v. Armstrong,* 63 Wis. 162, 169, 23 N. W. 407; *McMaster v. Scriven,* 85 Wis. 162, 171, 55 N. W. 149; *Will of Ball,* 153 Wis. 27, 37, 141 N. W. 8; *Will of Duncan,* 154 Wis. 39, 44, 141 N. W. 1002. This burden, under the record, has not been so met by the contestant that we would be warranted in setting aside the findings of the trial court in that regard.

On the third and fourth grounds of objection, namely, the alleged insufficient mental capacity of the testatrix and the existence in her mind of insane delusions concerning

her daughter, the burden of proof also rests upon the contestant. *Allen v. Griffin,* 69 Wis. 529, 537, 35 N. W. 21.

From contestant's own testimony it appears that the relationship between the mother and the daughter had been at prior times unfriendly, but that the daughter lived near the mother from about September, 1912, to January, 1917, visiting her frequently, helping in the care of her person and her property; that trouble had arisen between the contestant and her husband, Winters, with whom the mother remained on friendly terms; that in October, 1918, the contestant made application for her own appointment as guardian of her mother, and that upon the hearing of such application the county court deemed it proper to appoint some one to look after Mrs. Schacht's property, but refused to appoint the contestant and appointed a disinterested person, but owing to an appeal being taken from the order of appointment such guardian never acted. From that time on the feeling of the mother towards the daughter was very bitter and she frequently indulged in very extravagant statements of hatred and fear of the daughter. The evidence, however, in this matter falls far short of convincing us that the will was the product of an insane mind or that the trial court was wrong in overruling the objections on each of these grounds. We do not deem it necessary to further discuss in detail this unfortunate situation between mother and daughter. It must suffice to say that the record is such that the findings of the trial court are sustained.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $10 costs, on September 23, 1921.