WILL OF SZPERKA: OLSZEWSKI, Appellant, vs. BOREK and another, Respondents.*

*November 18—December 15, 1948.*

---

* For disposition on motion for rehearing see post, p. 158b.

*Clarence J. Bullock,* attorney, and *William H. Churchill* of counsel, both of Milwaukee, for the appellant.

For the respondents there was a brief by *Mathew Horwitz* and *John J. Devos,* both of Milwaukee, and oral argument by *Mr. Horwitz.*

BROADFOOT, J.   On and prior to September 7, 1946, Wincenty Szperka, a laborer by occupation who was more than seventy years of age, resided with his wife in a home in Milwaukee, Wisconsin, which they owned as joint tenants.   On that date Mrs. Szperka died.   Within a few days he consulted his lawyer and proceedings were had to secure a certificate of termination of the joint tenancy and of his survivorship as to the home and a joint bank account.   This certificate was signed and filed in the county court of Milwaukee county on September 17, 1946.

Soon thereafter Mr. Szperka met the same lawyer on the street, stated that he wished to draft a will, and was advised to come to the lawyer's office.   He appeared at the office and gave directions as to the drafting of his will but his lawyer did not like the terms outlined and suggested some changes. After two or more further conferences a will was drafted and the same was executed on October 18, 1946, with the lawyer and his wife signing as attesting witnesses.   The will was left in the custody of the lawyer until about the first of June, 1947.

Within a few days after the execution of the will the lawyer called Elizabeth Olszewski, a daughter of the testator, who had been named as executrix of the will, and informed her that the testator had executed a will which was in the custody of the lawyer; that she had been named as executrix therein; and

that if anything happened to the testator she was to take charge of his affairs.

The lawyer had practiced law about fifteen years, had frequently drafted wills, and his wife had been an attesting witness to many of them.

About June 1, 1947, the testator and Michael Olszewski, the husband of Elizabeth Olszewski, appeared at the lawyer's office where testator asked that the will be read. The lawyer produced the will and read the same. The testator took the will with him upon leaving the office and asked Mr. Olszewski, his son-in-law, to keep it for him.

The testator died on June 9, 1947. He was survived by three daughters and a granddaughter, who were his sole heirs, and all of them were made beneficiaries under the will.

After the death of the testator, the will was taken to another lawyer, who filed the same together with a petition for the probate thereof. The granddaughter, Angeline C. Moore, and Pearl Borek, one of the testator's daughters, appeared by attorney and filed objections to the probate of the will on the following grounds: (1) Lack of testamentary capacity; (2) procurement by undue influence; (3) procurement by fraud; (4) nonexecution in accordance with the statutes of the state of Wisconsin; and (5) that said instrument is not the last will and testament of the deceased.

The will contained the usual attestation clause which recited the proper execution thereof, and that the testator at the time of the execution of the will was of sound and disposing mind and not under any influence or restraint. Prior to the hearing the usual blank proofs of will were submitted to the attesting witnesses and they signed the same. The proofs of will also recited that the will was properly executed, that the testator was of sound mind and memory, and was not under any restraint at the time of the execution of the will.

The scrivener's wife was first called as a witness and testified that the will was properly executed; that testator signed it as his own free act; that she did not observe that he was under the influence of liquor; that he knew what he was doing; and that he acted natural the same as any other individual would act. The court had her read the proof of will she had signed and asked her if the statements in that paper were all true and correct, and she answered they were as far as she knew.

The lawyer who drafted the will was called as a witness and testified to its proper execution. He stated that when the testator first discussed the drafting of the will he felt that testator was reciting provisions that had been suggested to him by some third party. When asked as to the testamentary capacity of the testator at the time of the execution of the will he made the following reply: "I have great doubts whether he had the mental capacity to make a will." He based his statement upon the fact that testator had been drinking; that he seemed to have a "hang-over" on the morning of the execution of the will, and that he had difficulty in signing his name.

Four other witnesses were called by the proponent, who gave some vague and not too helpful testimony as to the testamentary capacity of the testator. The contestants produced no witnesses.

Before reaching an opinion from the evidence here presented in the record, it will be well to bear in mind certain general principles of law that may be applied in will contests. It has often been held by this court that one of the most important rights that a normal adult person has is his power to dispose of his property by will as he chooses. In fact, it has been referred to by this court as a "sacred right" and one that is guaranteed by the constitution. *Will of Rice* (1912), 150 Wis. 401, 136 N. W. 956, 137 N. W. 778; *Upham v. Plank-*

*inton* (1913), 152 Wis. 275, 140 N. W. 5; *Will of Ball* (1913), 153 Wis. 27, 141 N. W. '8; *Duncan v. Metcalf* (1913), 154 Wis. 39, 141 N. W. 1002; *Will of Schaefer* (1932), 207 Wis. 404, 241 N. W. 382.

It is also a general rule that a testator is presumed to be sane and to have sufficient mental capacity to make a valid will until satisfactory proof to the contrary is presented. 68 C. J., Wills, p. 444, sec. 43; 57 Am. Jur., Wills, p. 98, sec. 91.

The signing of an attestation clause is of great importance, particularly when one of the attesting witnesses is a lawyer. In *Will of Maresh* (1922), 177 Wis. 194, 197, 187 N. W. 1009, the court adopted the following quotation from the case of *Will of Hawkinson* (1910), 143 Wis. 136, 126 N. W. 683:

"As to wills, however, the rule seems to be general . . . that the attestation itself is *prima facie* proof of all facts essential to due execution, to which attesting witnesses could depose if present, including the authenticity of testator's signature, . . . also his volition in signing and his mental capacity and understanding of his act."

In 1 Page, Wills (2d ed.), p. 1160, sec. 696, the rule is stated as follows:

"If the subscribing witnesses testify adversely to the capacity of testator, they have under oath stated that he was incompetent to make a will, while by their solemn acts in subscribing as witnesses they have in effect formally declared that he was competent. Accordingly, their testimony adverse to the capacity of testator is, under such circumstances, of but little value. . . . Such evidence may be insufficient to overcome the presumption of sanity."

This general principle has been approved in the following decisions by this court: *Will of Lewis* (1881), 51 Wis. 101, 7 N. W. 829; *Loughney v. Loughney* (1894), 87 Wis. 92,

58 N. W. 250; *Will of Grant* (1912), 149 Wis. 330, 135 N. W. 833; *Will of Frederiksen* (1944), 246 Wis. 263, 16 N. W. (2d) 819.

The last three objections were not pressed by the contestants. The trial court found that the will was not procured by undue influence, and we agree with that finding. In fact, there is no evidence in the record of any attempt to influence the testator except by the scrivener himself, and the testator had sufficient mental capacity to resist the efforts of the scrivener to change materially the testator's plan for the disposition of his property. Thus the only question to be determined upon the appeal is the testamentary capacity of the testator at the time of the execution of the will.

In reviewing the testimony and the record as to this point, we start, upon the authority of the cases cited above, with the presumption of sanity and testamentary capacity of the testator at the time of the execution of the will; that the recitals in the attestation clause are presumed to be true and can only be overcome by clear and satisfactory evidence; that if an attesting witness attempts to impeach a will after he has signed an attestation clause, such as the one before us, his testimony should be received with caution and suspicion; and that our public policy is to effectuate, where possible, the express wishes of the testator.

There is no evidence in the record that the testator lacked mental capacity to execute a will except some evidence that he occasionally drank intoxicating liquors to excess and the statement by the lawyer who drafted the will and who was one of the attesting witnesses that he had "great doubts" as to the mental capacity of the testator. So far as the record discloses the witness based that statement upon his conclusion that some unnamed third person was attempting to unduly influence the

testator and that on the morning of the execution of the will the testator had a "hang-over." The witness stated that in spite of the "hang-over" the testator understood the contents of the will when it was read to him and approved the same. The attempt of the scrivener to impeach the will by injecting his doubts of the testamentary capacity of the testator without a recital of any facts that would raise doubts in the mind of any unbiased person requires his testimony to be viewed with caution and suspicion. The conduct of the scrivener was censured by the trial judge, and he would have been justified in characterizing his conduct in stronger language.

There is no credible evidence in the record that is sufficient to overcome the presumption of sanity or the statements of the attesting witnesses in the attestation clause. The will should have been admitted to probate.

In connection with this appeal there was a motion for the allowance of attorneys' fees on behalf of the attorneys for the proponent of the will. This matter can be properly determined by the trial court.

*By the Court.*—Judgment reversed, and cause remanded with instructions to enter a judgment admitting the will to probate.

The following opinion was filed February 15, 1949:

BROADFOOT, J. (*on motion for rehearing*). It appears from the brief of respondents on motion for rehearing that the order denying probate of the will of deceased was made on motion at the close of proponent's case. For that reason the objectors had no opportunity to present any evidence to support their contentions. They should have their day in court.

*By the Court.*—Upon the motion for rehearing the mandate previously entered herein is vacated and set aside and the

following mandate is entered: Judgment reversed and cause remanded for a new trial, with $25 costs, on the motion for rehearing to the respondents.