ESTATE OF DAWLEY: DAWLEY (Richard), Appellant, vs. DAWLEY (Gene) and others, Respondents.

*September 13—October 9, 1951.*

*James H. Wegener* and *Maurice B. Pasch,* both of Madison, for the appellant.

For the respondents there was a brief by *Schubring, Ryan, Petersen & Sutherland,* attorneys, and *Arnold Petersen* of counsel, all of Madison, for Gene Rast Dawley and others, and *Spohn, Ross, Stevens & Lamb,* attorneys, and *Frank A. Ross* of counsel, all of Madison, for the Wisconsin Alumni Research Foundation, and oral argument by *Mr. Frank A. Ross, Mr. Hugh A. Ross,* and *Mr. Petersen.*

BROADFOOT, J.   The testator died suddenly at the age of fifty-two years from a coronary occlusion.  He was graduated in chemical engineering from the University of Illinois and held a Master's degree in science at the University of Wisconsin.  About the year 1925 Mr. Dawley began raising white rats for laboratory experimental purposes.  The business was operated through a corporation, Sprague-Dawley, Inc., of which Mr. Dawley owned practically all of the stock.  The business was very successful and the decedent

left an estate of nearly $235,000. The Wisconsin Alumni Research Foundation, a nonprofit organization engaged in scientific research, purchased many of the rats raised by the corporation.

In 1924 testator was married to Jessie Sprague, who divorced him in 1935. They had no children and in 1929, at the request of his wife, they adopted Richard Dawley, the objector. Richard was nine years old at the time of the divorce and the divorced wife was given custody of the adopted son. Testator supported Richard Dawley under various court orders in connection with the divorce proceedings until Richard was twenty-one years of age.

In the instrument offered as his last will and testament, the testator provided for the payment of his debts, the expenses of last sickness and burial, and the estate and inheritance taxes. He then bequeathed $100 to Richard, the household and personal effects and forty per cent of the common stock of Sprague-Dawley, Inc., to Mrs. Dawley, and left the rest of the estate in trust with Mrs. Dawley named as trustee. The income from the trust is to be paid to Mrs. Dawley during her lifetime and upon her death to testator's brother, Earle Dawley. Upon the death of the survivor of Mrs. Dawley and Earle Dawley the trust estate goes to the Wisconsin Alumni Research Foundation. The provision for Richard was contained in paragraph 3 of the will, and reads as follows:

"3. To my adopted son, Richard Dawley, I give and bequeath the sum of one hundred dollars, and no more. This bequest is made after due consideration of my duties as a foster father, and of the funds I have already provided for his education and support, his present age of twenty-one years, and the fact that he has lived with me only about six years, and the fact that he is now married. The six years during which Richard lived in my house was a period of domestic discord which resulted in divorce and the custody of said Richard was given to his foster mother. While it is

my desire and intention to provide for as much education as he desires and can absorb while I live, because of the high regard in which I hold the boy, any and all advances customarily made by me now or in the future for his benefit shall cease at my death, and this legacy of one hundred dollars shall be his whole share of my estate."

In paragraphs 7 and 8 of the will, the testator made provision for the care and maintenance of his widow and for periodic visits by members of her family in the event she might at any time in the future be declared insane and committed to an institution.

The objector introduced testimony which he claims proved that the testator drank intoxicating liquor to excess; that he took drugs, some of which were narcotics; that testator was committed to the Bradley Memorial Hospital at Madison upon a petition alleging that he was insane and suffering from an alcoholic condition; that he had a feeling of hatred toward his first wife; that after the divorce he threatened to kill her and also to kill Richard Dawley. The contestant also contends that the will is not a normal or natural will. The contestant claims that the proof of excessive drinking and the use of drugs and the provisions of the will itself establish that the testator lacked testamentary capacity in that he was not able to comprehend his proper legal relationship to his adopted son; that the testator was susceptible to influence in the direction of injury to his son and divorced wife; that the testator's wife was in position to influence him and that she had a disposition to influence him; that the evidence of threats and of his feeling toward his divorced wife amount to an insane delusion or obsession, and that the will can only be explained because of obsessions or undue influence.

The evidence of the proponents of the will was that the testator was a brilliant scientist and an excellent business man; that there was no showing of excessive use of intoxicating liquors or drugs after 1944; that he was strong

willed; that in prior wills drawn before he married Gene Rast Dawley he only provided for a $100 bequest to Richard.

From all of the evidence the trial court found that the instrument was properly executed; that at the time of the execution of said instrument and prior thereto the decedent was not suffering from any insane delusion or obsession, but was mentally competent; that he was clear and rational at all times during the preparation and execution of the instrument; that he was not a person susceptible to undue influence, and that no undue influence was exercised on him during the preparation and execution of the will dated November 17, 1948. In addition to filing findings of fact and conclusions of law the trial court prepared a comprehensive memorandum decision that showed a careful study of the authorities and all of the evidence presented in this case.

In his brief the appellant admits that he has not produced sufficient evidence of lack of testamentary capacity or undue influence to justify setting aside a natural will. Upon his appeal the appellant relies almost entirely upon his contention that the will offered for probate was an unnatural will, and he quotes from *Elliott v. Fisk,* 162 Wis. 249, 254, 155 N. W. 110, where the court, referring to *Gunderson v. Rogers,* 160 Wis. 468, 152 N. W. 157, said:

". . . that strong evidence of lack of testamentary capacity or of undue influence was required to nullify a will made according to the dictates of natural justice. Where it is not so made less proof may suffice, for legitimate inferences of infirmity may be drawn from its departure from natural justice."

The appellant contends that the provisions made for Richard Dawley in the paragraph of the will quoted above and the provisions in paragraphs 7 and 8 of the will with reference to the possible commitment of his widow to an

institution are so unnatural that they can only be the result of obsessions or undue influence.

In its memorandum decision the trial court made two quotations from the case of *Will of Ball*, 153 Wis. 27, 31, 32, 141 N. W. 8, as follows:

"Filial expectancy of profiting by inheritance is proper. . . . but, in a very high degree, the testamentary right, as compared with that of the mere subjects of testamentary charity or bounty, is the superior. . . . 'The hope of inheritance, which any child may indulge in during the parent's life, bears no comparison in the eyes of the law to the right of disposal by the parent.'

"The sole question in a will contest is, Does the purported will legally express the testator's dying wish? His right, not that of any survivor, is the dominant thing. The will may be very unlike what it would seem, from a moral standpoint, it ought to be, yet if it lawfully expresses the testator's dying wish, that ends the subject,—there is no power in equity to change it or set it aside,—the judicial power exists only to execute it."

This rule was affirmed in *Will of Szperka*, 254 Wis. 153, 35 N. W. (2d) 209, 35 N. W. (2d) 911.

The trial court found that under the circumstances here presented and from the entire record herein, the will was not an unnatural testamentary disposition and that the inferences suggested by the appellant could not properly be drawn in this case. The questions at issue are essentially questions of fact. The findings of the trial court were not contrary to the great weight and clear preponderance of the evidence, but were supported by it.

*By the Court.*—Judgment affirmed.

BROWN, J., took no part.