ESTATE OF BAUER: BAUER, Appellant, vs. BOSSER, Respondent.

*June 6—July 3, 1953.*

For the appellant there was a brief by *Joseph Witmer* and *Bradford & Gabert,* all of Appleton, and oral argument by *Mr. Alfred S. Bradford* and *Mr. Witmer.*

For the respondent there was a brief and oral argument by *David L. Fulton* of Appleton.

MARTIN, J.    The only question raised on this appeal is whether, on September 15, 1943, Anton Bauer had sufficient mental capacity to make a valid will.

Anton Bauer was a native of Bohemia. He had three children by his first wife: Annie, who was incompetent and confined in an institution in Seattle for many years prior to decedent's death; Cecelia, who died in 1922; and John, unmarried, who lived with the testator in Appleton. His first wife died; he married again and was divorced in 1900. There was one son, Arthur, the issue of the second marriage, whose custody was given to the mother at the time of the divorce and whose whereabouts are unknown.

Testator owned the homestead in which he and John lived and rented the upstairs flat. In 1922 he purchased property on Spencer street, which he improved and rented. In 1927 he acquired a one-half interest in property on Packard street, John owning the other half. He borrowed $1,200 from the bank, giving a mortgage on the Spencer-street and the Packard-street properties, and using some of the proceeds for the purchase of his interest in the Packard-street property. The latter was also rented. In 1930 the Spencer-street property was sold to the De Nobles, who assumed the mortgage thereon. In 1940, having defaulted on the mortgage, the De Nobles conveyed the property to John who then remodeled the place in an attempt to realize an income from rents. The plan failed and the property was lost. The Packard-street property was also lost and John went into bankruptcy.

The will of October 7, 1931, left most of testator's property to John. On September 15, 1943, he made the will here

in question, leaving his entire estate to the children of his daughter Annie.

Alfred C. Bosser testified that he had known the testator for fifty years; that Anton Bauer called upon him two or three times prior to September 15, 1943, and discussed the making of a new will. On these occasions he complained to Bosser that John had lost the Spencer and Packard-street properties; that John had been drinking and gambling and unable to keep up the payments on the properties. He thought John had probably lost between $2,500 and $3,500 for him in this way and that the remainder of his property should therefore go to the children of his daughter. Anton felt he was justified in the view that John had mismanaged the properties and in view of what he told his lawyer, Bosser did not think the 1943 will unfair. It was Bosser's testimony that Anton Bauer came into the office alone, and sober, and was of sound mind when the will was executed. He dictated the will in Bauer's presence:

"I am sure the will wasn't read over by him. I might have read it over but I can't remember that. I do know that he was there when I dictated the will and that I stopped and asked him a few times if that was what he wanted and he said 'Yes.'"

Andrew W. Parnell, then an associate of Mr. Bosser, and Ilene Sprister Deltgen, Bosser's secretary, were witnesses to the execution of the will. They both testified that the testator was sober and was, in their opinion, of sound mind; that although he spoke a mixture of German and English, they understood him and knew what he wanted.

In our opinion, the testimony of the scrivener, an attorney of high standing in his profession and of many years of experience, and that of Mr. Parnell, now a judge of the circuit court, cannot be lightly brushed aside. In any event, it must be outweighed by evidence on the part of the contestant which

is clear, convincing, and satisfactory. It was said in *Estate of Bickner* (1951), 259 Wis. 425, 433, 49 N. W. (2d) 404:

"To bar the will of a testator requires proof, and the burden of proof rests with the contestant to show by clear, convincing, and satisfactory evidence that the mind of the testator was deranged. The legal presumption is in favor of sanity and sufficient legal capacity to make a valid will, and the burden of showing such insanity or incapacity is upon the contestants. *Will of Emerson,* 183 Wis. 437, 198 N. W. 441; *Estate of Scherrer,* 242 Wis. 211, 7 N. W. (2d) 848; *Will of Szperka,* 254 Wis. 153, 158, 35 N. W. (2d) 209, 35 N. W. (2d) 911."

John Bauer testified that he thought his father's mind slipped or changed during the five years before he died. Some attempt was made to offer evidence that Anton would listen to the radio, jump up and say they were talking about him. The contestant also presented the testimony of Mrs. Alex Mignon who stated that "His mind just wasn't so good. . . . Several years back that he talked to me so funny. I couldn't even understand what he would say when he talked to me." But she admitted that she did not get along with Anton Bauer; that she rarely talked to him; that he talked mostly German and she couldn't understand German. These opinions do not constitute clear, convincing, and satisfactory evidence of mental incapacity. On the other hand, there was testimony by Mrs. Lloyd Braun, who lived in the upstairs flat of decedent's home from 1943 to 1945, to the effect that Anton Bauer was mentally competent. She said that there were times when she had him sit with her baby and "I think Mr. Bauer was all right mentally while I was there because I wouldn't let my baby with him if I didn't think he was."

Contestant argues that testator was suffering from an insane delusion when he believed that he had lost valuable properties through mismanagement by his son John.

From the facts in the record regarding the history of testator's Spencer and Packard-street properties, it is not difficult to understand that a man of almost ninety years might believe what he did, whether it was actually true or not. Those properties had produced income for the testator for many years. After some time during which John had managed them for him, they were lost and the old man was left without the properties and without the income they had afforded him. Moreover, various transactions were involved in the history of these properties, which presented a rather complicated picture, difficult for an elderly man of limited education to understand. We cannot attribute such lack of understanding to insanity.

In *Estate of Bickner, supra,* where the contention was made that the testator suffered from insane delusions because he believed that the contestants whom he saw taking boxes and rugs from his home were stealing such articles, when in fact the articles belonged to the contestants, the court said that, there being some basis for his belief, his conclusion, however erroneous or unjust, was not an insane delusion, and quoted from 68 C. J., Wills, p. 433, sec. 30, as follows:

"A mere mistaken belief or an erroneous or unjust conclusion is not an insane delusion if there is some foundation in fact or some basis on which the mental operation of the testator may rest, even though the basis may be regarded by others as wholly insufficient. Similarly, even though the testator may be in error in his reasoning, undue or unnatural prejudice or aversion, if based on any kind of reasoning, is not an insane delusion."

There were facts and circumstances from which Anton Bauer could have reasoned that his son John had lost his properties, and we cannot hold that such belief constituted an insane delusion even if it was erroneous.

As pointed out above, in the testimony of Mr. Bosser, it was that belief which prompted the testator to provide in

his 1943 will that his grandchildren should receive all his estate. Under these circumstances, it was not an unnatural will, as contestant argues. Anton Bauer knew that he had a daughter, Annie, who was incompetent and that she was being cared for in an institution. It was not unnatural that he should want her share to go to her children. He had provided a home for John all his life; and believing that John had dissipated his estate to the extent that the Spencer and Packard-street properties were lost, it was not unnatural that he should want to make the grandchildren his beneficiaries. It is undisputed in the record that he knew what his possessions consisted of at the time he made the 1943 will and that he also knew who were the natural objects of his bounty. Mr. Bosser testified that he discussed these matters with him on a number of occasions and that the old man knew what he wanted to do.

"There is the high place, in contemplation of the fundamental principles of civil life, which the right of individual liberty to dispose of one's property by contract or will,— holds. It is not the business of courts to undo what an old person may have done with his property, because of judicial notions of propriety or moral obligation, in a case of this sort, or the wishes of relatives, however deserving. Did the man do freely what he wanted to do and was competent to decide upon? Those are the sole questions." *Boardman v. Lorentzen* (1914), 155 Wis. 566, 579, 145 N. W. 750.

There is considerable testimony in the record regarding Anton Bauer's drinking habits. John stated that his father drank heavily and was violent when intoxicated. Mrs. Mignon, the neighbor, said he would sometimes come home drunk and was noisy and quarrelsome. These matters are immaterial to the issue; we are concerned only with the testator's mental competency when he executed his will on September 15, 1943, and it was shown by the testimony of

Mr. Bosser, Mr. Parnell, and Mrs. Deltgen, the only persons present, that Anton Bauer was sober at that time.

The will of September 15, 1943, was the testator's last will, and in our opinion he was mentally competent when he made it. The contestant has failed to prove his objections by clear, convincing, and satisfactory proof, and the judgment of the trial court is affirmed.

*By the Court.*—Judgment affirmed.